53 So.3d 38 (2009)
MADISON COUNTY DEPARTMENT OF HUMAN RESOURCES
v.
T.S., by her mother and next friend F.M., and F.M., individually.
No. 1081405.
Supreme Court of Alabama.
October 23, 2009.
Opinion on Return to Remand January 29, 2010.
Opinion on Return to Second Remand May 28, 2010.
*40 Troy King, atty. gen., and Sharon E. Ficquette, chief legal counsel, and James E. Long, deputy gen. counsel, Department of Human Resources, for appellant.
Douglas J. Fees of The Cochran Firm-Huntsville, Huntsville, for appellee.
STUART, Justice.
Madison County Department of Human Resources ("DHR"), the legal guardian of T.S., appeals the trial court's judgment approving the settlement of a personal-injury claim involving T.S. and approving an attorney fee in the amount of $262,500, plus litigation expenses. We remand with directions.

Facts and Procedural History
In November 2006, DHR had temporary legal custody of T.S., a 13-year-old, hearing impaired, mute quadriplegic who resided at Ability Plus, Inc., a group home. Being severely mentally disabled and suffering from cerebral palsy, T.S. was unable to dress herself, bathe herself, feed herself, or perform any basic living skills without substantial assistance. On November 14, 2006, an employee of Ability Plus left T.S. unattended, in a bathtub filled with water the temperature of which was approximately 140 degrees Fahrenheit. T.S. sat in the tub of hot water until another employee noticed some of T.S.'s skin floating around her in the tub and removed her. T.S. suffered second- and third-degree burns to both her feet and ankles, her buttocks, and her bilateral posterior upper thigh and bilateral medial thigh area.
On August 4, 2008, F.M., T.S.'s mother, entered into a contingency-fee contract with Doug Fees, a lawyer with The Cochran Firm, to recover damages on claims against any and all parties for the injury to T.S. The contingency-fee contract provided:
"[F.M.] agrees that said attorneys shall receive for their services a sum equal to thirty-three and one-third percent (33 1/3%) of the total recovery so obtained.
"It is understood that the attorney's fee is computed based upon 33 1/3% of the total recovery. It is also understood that the expense necessarily incurred by said attorneys in the investigation and preparation of this claim will be deducted from the balance of the proceeds after payment of attorney fees."
On August 22, 2008, Fees filed a complaint on behalf of T.S., a minor suing by and through her mother and next friend F.M., and F.M., individually (hereinafter referred to collectively as "F.M."), against Ability Plus, the group home where T.S. was injured; Cora, Inc., d/b/a/ Mr. Rooter, the plumbing company that installed a heater in the bathtub a week before T.S. was injured; and various officers and employees of Ability Plus. The complaint included claims of negligence/wantonness, negligence/wantonness per se, vicarious liability, negligent hiring/retention, negligent/wanton supervision, product liability, breach of implied warranty, violation of the *41 Alabama Extended Manufacturer's Liability Doctrine, failure to warn, and loss of consortium. DHR was not a party to the lawsuit.
In November 2008, the parties agreed to participate in mediation, and, in a one-day session, the parties agreed upon a confidential settlement. A settlement summary indicates that the total settlement was in the amount of $787,500. After the deduction of litigation expenses ($29,315.99), the attorney fee ($262,500), Alabama Medicaid's subrogation lien ($85,628.81),[1] and F.M.'s loss-of-consortium award ($50,045.20), the remainder was to be used to purchase an annuity to fund a special-needs trust paying T.S. $1,780 a month for her care for her life. The annuity was guaranteed for 30 years.[2]
At the hearing to approve the settlement, the trial court viewed DHR as an indispensable party and refused to approve the settlement without DHR's consent. When DHR was contacted, it refused to consent to the settlement. F.M. then filed a motion to add DHR as an indispensable party. In a response to the motion to add it as an indispensable party, DHR argued, in pertinent part:
"The attorney fee request is unreasonable, excessive, and may violate the prohibition of Rule 1.5(e)(4) of the Alabama Rules of Professional Conduct against charging an excessive attorney fee. The $262,500 attorney fee requested represents 33 1/3% of the total settlement amount of $787,500 (if the settlement summary [provided to DHR] reflects the total settlement amount correctly). Such a large fee amount and percentage is excessive and unreasonable in a case that was settled in the first year of litigation, before conducting extensive discovery. An attorney fee award of approximately 15% is more reasonable, especially considering the needs of [T.S.] for long-term financial assistance due to her injuries."
Fees, on behalf of F.M., responded, arguing that the attorney fee of 33 1/3% of the settlement, plus expenses, was reasonable in light of both the standard contingency fee in a personal-injury case and the fact that when he accepted the case he had only three months before F.M.'s claim would be barred by the statute of limitations. In support of his fee, Fees executed an affidavit, stating:
"1. I reside in Huntsville, Alabama. I graduated from the University of Alabama School of Law in 1983, and was licensed to practice in Alabama in September 1983. For the past 25 years, my practice has focused exclusively in representing victims of serious injury or death due to the wrongful conduct of others.
"2. On August 4, 2008, I was retained to represent [F.M. and T.S.]. We agreed upon a 33-1/3 [%] contingency fee, plus expenses, with the fee for services to be paid only if there was a recovery.
"3. The expenses incurred in bringing about a successful recovery are the usual and customary expenses my firm advances on cases involving serious injury or death.
"4. The total recovery in this case was $787,500.00. Pursuant to the Professional Service Agreement executed by myself and [F.M.], my fee constitutes 33-1/3% of that recovery or $262,500.00, plus expenses."
*42 Fees also submitted affidavits from two attorneys who practice in Huntsville and who stated that, in their opinions, the attorney fee of $262,500 (33 1/3% of $787,500), plus expenses, was reasonable.
The trial court added DHR as a party and conducted a hearing to determine whether to approve the settlement. No testimony was taken or evidence admitted at the hearing. At the hearing DHR challenged the reasonableness of the attorney fee. Fees acknowledged that the only evidence in support of the reasonableness of the attorney fee was the affidavits attached to his response and the case file. The trial court entered an order on March 6, 2009, approving the settlement. With regard to the attorney fee, the order stated:
"The Court has been advised that out of the proceeds of the settlement, plaintiff's attorney, Douglas J. Fees, is requesting to be paid an attorney's fee in the amount of $262,5000.00 plus reimbursement of litigation expenses in the amount of $29,315.99. Based upon the evidence, the Court concludes that the attorney fees and expenses sought by counsel are just, fair and equitable for the service he has rendered."
In April 2009, DHR filed a motion to alter, amend, or vacate the judgment insofar as it approved the attorney fee and expenses, stating:
"COMES NOW, Madison County Department of Human Resources (hereafter DHR) legal custodian of [T.S.] and moves this court to alter, amend, or vacate its final order filed March 6, 2009, approving attorney fees and expenses in the settlement of this case. For cause, DHR avers as follows:
"1. The final order filed March 6, 2009, after a pro[chein] ami hearing approved attorney fees and expenses for plaintiff counsel totaling $291,815.99 ($262,000 fees and $29,815.99 expenses) or 37% of the settlement total of $787,500.
"2. The court's order fails to meet legal requirements regarding a determination of reasonable attorney fees and expenses. `[A] trial court's order regarding an attorney fee must allow for meaningful appellate review by articulating the decision made, the reasons supporting those decisions, and how it calculated the attorney fee.' Pharmacia Corp. v. McGowan, 915 So.2d 549 (Ala. 2004) (quoting City of Birmingham v. Horn, 810 So.2d 667, 681-82 (Ala.2001)); see also Love v. Hall, 940 So.2d 297 (Ala.Civ.App.2006) (reversing an attorney fee award where the order `contain[ed] no findings').
"3. The court order failed to discuss or comply with the requirements of Peebles v. Miley, 439 So.2d 137 (Ala.1983), for determination of the reasonable attorney fees.
"4. The approved attorney fees and expenses are unreasonable and excessive. Rule 1.5(e)(4), Ala. R. Prof. Cond.; Reynolds v. First Alabama Bank of Montgomery, N.A., 471 So.2d 1238 (Ala. 1985); Malone v. Malone, 491 So.2d 932 (Ala.1986).
"5. The approved attorney fees and expenses are not in the best interest of the child. Abernathy v. Colbert County Hospital Board, 388 So.2d 1207 (Ala. 1980); Large v. Hayes, by and through Nesbitt, 534 So.2d 1101 (Ala.1988)."
Fees, on behalf of F.M., filed a motion in opposition to DHR's motion to alter, amend, or vacate the judgment insofar as it approved the attorney fee and expenses. In the motion, Fees argued that DHR had prevented Fees from obtaining records to support the litigation against Ability Plus *43 and its officers and employees.[3] He states:
"Had DHR devoted even a fraction of the effort and energy obtaining recovery for [T.S.] that it has spent opposing fair reimbursement for those who did so, it would have reduced the work required and thus lessened the fees commensurate with that work."
Additionally, Fees argued in the motion that the findings of fact by the trial court adequately articulated why the requested attorney fee is just and equitable. In its order, the trial court stated:
"Having considered all matters material to the proposed settlement the Court finds as follows:
"A. [T.S.], a minor, brings this lawsuit by and through her mother and next friend, [F.M.], for injuries and damages allegedly sustained in an incident on November 14, 2006 in which she was burned in a bathtub.
"B. [F.M.] has asserted the individual claims for loss of consortium of her minor child arising from this same incident.
"C. The court expressly finds that [F.M.] as the mother and next friend of [T.S.] is the proper party to bring this claim for bodily injury allegedly sustained by [T.S.] in the incident of November 14, 2006.
"D. The court finds that as a proximate result of the incident of November 14, 2006, [T.S.] sustained burn injuries to her legs and buttocks that have left her permanently scarred. She was principally treated at UAB hospital where she incurred substantial medical expenses that have all been paid by Alabama Medicaid.
"E. The court finds that Alabama Medicaid claims subrogation in the amount of $85,628.81[4] as to any recovery [T.S.] might make in this case and has been informed that a condition of this settlement requires that this be satisfied from any judgment rendered in this matter.
"F. The court finds that [T.S.] has reached maximum medical improvement but will suffer from permanent scarring among other injuries in the future.
"G. The court finds that [F.M.] did suffer a loss of consortium of her minor daughter.
"H. The court understands that the defendants deny that they have liability to [T.S.] arising from the incident of November 14, 2006, and that they acted in any manner as alleged in the complaint or that any alleged wrongful conduct proximately caused injury to either [T.S. or F.M.]....
....
"J. The court has been advised that out of the proceeds of the settlement, plaintiffs' attorney, Douglas J. Fees, is requesting to be paid an attorney's fee in the amount of $262,500.00 plus reimbursement of litigation expenses in the amount of $29,315.99. Based upon the evidence, the Court concludes that the attorney fees and expenses sought by counsel are just, fair and equitable for the service he has rendered."
The trial court denied DHR's motion to alter, amend, or vacate the judgment with regard to the approved attorney fee and expenses. DHR appeals.

*44 "The determination of whether an attorney fee is reasonable is within the sound discretion of the trial court and its determination on such an issue will not be disturbed on appeal unless in awarding the fee the trial court exceeded that discretion. State Bd. of Educ. v. Waldrop, 840 So.2d 893, 896 (Ala.2002); City of Birmingham v. Horn, 810 So.2d 667, 681-82 (Ala.2001); Ex parte Edwards, 601 So.2d 82, 85 (Ala.1992), citing Varner v. Century Fin. Co., 738 F.2d 1143 (11th Cir.1984).
"This Court has set forth 12 criteria a court might consider when determining the reasonableness of an attorney fee:
"`(1) [T]he nature and value of the subject matter of the employment; (2) the learning, skill, and labor requisite to its proper discharge; (3) the time consumed; (4) the professional experience and reputation of the attorney; (5) the weight of his responsibilities; (6) the measure of success achieved; (7) the reasonable expenses incurred; (8) whether a fee is fixed or contingent; (9) the nature and length of a professional relationship; (10) the fee customarily charged in the locality for similar legal services; (11) the likelihood that a particular employment may preclude other employment; and (12) the time limitations imposed by the client or by the circumstances.'

"Van Schaack v. AmSouth Bank, N.A., 530 So.2d 740, 749 (Ala.1988). These criteria are for purposes of evaluating whether an attorney fee is reasonable; they are not an exhaustive list of specific criteria that must all be met. Beal Bank v. Schilleci, 896 So.2d 395, 403 (Ala.2004), citing Graddick v. First Farmers & Merchants Nat'l Bank of Troy, 453 So.2d 1305, 1311 (Ala.1984).
"We defer to the trial court in an attorney-fee case because we recognize that the trial court, which has presided over the entire litigation, has a superior understanding of the factual questions that must be resolved in an attorney-fee determination. Horn, 810 So.2d at 681-82, citing Hensley v. Eckerhart, 461 U.S. 424, 437, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983). Nevertheless, a trial court's order regarding an attorney fee must allow for meaningful appellate review by articulating the decisions made, the reasons supporting those decisions, and how it calculated the attorney fee. Horn, 810 So.2d at 682, citing American Civil Liberties Union of Georgia v. Barnes, 168 F.3d 423, 427 (11th Cir. 1999); see also Hensley, 461 U.S. at 437, 103 S.Ct. 1933."
Pharmacia Corp. v. McGowan, 915 So.2d 549, 552-53 (Ala.2004) (emphasis added).
In this case, the trial court's order approving an attorney fee in the amount of $262,500 plus litigation expenses in the amount of $29,315.99 provides no indication as to whether the trial court considered the criteria set forth for determining the reasonableness of an attorney fee as detailed in Pharmacia, nor does it indicate how the trial court calculated the attorney fee. Although the trial court states that its decision is based on the evidence, it provides no detailed application of the facts regarding Fees's fee to the factors set forth in Pharmacia. Additionally, although the record is filled with explanation for the litigation expenses, the record contains no evidence detailing the attorney fee for Fees. For instance, it does not contain any document detailing the time Fees spent working on the case. As we stated in Pharmacia, "[i]t is generally recognized that the `first yardstick that is used by the trial judges [in assessing the reasonableness of an attorney-fee request] is the time consumed.' Peebles v. Miley, 439 So.2d 137, 141 (Ala.1983)." 915 So.2d at 553. *45 Additionally, we note that sole reliance on F.M.'s execution of the contingency-fee contract providing that the attorney fee would be 33 1/3% plus expenses to establish the reasonableness of the attorney fee is misplaced. See Ex parte Peck, 572 So.2d 427 (Ala. 1990) (recognizing that although a parent can contract for payment of a reasonable fee for legal services on behalf of a minor, a trial court may review and reduce the agreed-upon attorney fee if it concludes that the attorney fee is unreasonable). Without some explanation by the trial court with regard to its consideration of the 12 factors set out in Van Schaack v. AmSouth Bank, N.A., 530 So.2d 740, 749 (Ala.1988), and discussed in Pharmacia and how it calculated the attorney fee, we cannot ascertain whether the trial court exceeded its discretion in awarding that fee. Therefore, we remand this cause to the trial court for the entry of an order explaining its decision and articulating its reasons for that decision. Due return shall be made to this Court within 42 days of the date of this opinion.
REMANDED WITH DIRECTIONS.
COBB, C.J., and LYONS, WOODALL, SMITH, BOLIN, PARKER, MURDOCK, and SHAW, JJ., concur.

On Return to Remand
STUART, Justice.
The Madison County Department of Human Resources ("DHR"), the legal guardian of T.S., appealed the trial court's judgment approving the settlement of a personal-injury claim involving T.S. and approving an attorney fee for the attorney who represented T.S. in the amount of $262,500, plus litigation expenses. On October 23, 2009, we remanded the case with directions, stating:
"In this case, the trial court's order approving an attorney fee in the amount of $262,500 plus litigation expenses in the amount of $29,315.99 provides no indication as to whether the trial court considered the criteria set forth for determining the reasonableness of an attorney fee as detailed in Pharmacia [Corp. v. McGowan, 915 So.2d 549 (Ala. 2004)], nor does it indicate how the trial court calculated the attorney fee. Although the trial court states that its decision is based on the evidence, it provides no detailed application of the facts regarding [Doug] Fees's fee to the factors set forth in Pharmacia. Additionally, although the record is filled with explanation for the litigation expenses, the record contains no evidence detailing the attorney fee for Fees. For instance, it does not contain any document detailing the time Fees spent working on the case. As we stated in Pharmacia, `[i]t is generally recognized that the "first yardstick that is used by the trial judges [in assessing the reasonableness of an attorney-fee request] is the time consumed." Peebles v. Miley, 439 So.2d 137, 141 (Ala.1983).' 915 So.2d at 553. Additionally, we note that sole reliance on F.M.'s execution of the contingency-fee contract providing that the attorney fee would be 33 1/3% plus expenses to establish the reasonableness of the attorney fee is misplaced. See Ex parte Peck, 572 So.2d 427 (Ala.1990) (recognizing that although a parent can contract for payment of a reasonable fee for legal services on behalf of a minor, a trial court may review and reduce the agreed-upon attorney fee if it concludes that the attorney fee is unreasonable). Without some explanation by the trial court with regard to its consideration of the 12 factors set out in Van Schaack v. AmSouth Bank, N.A., 530 So.2d 740, 749 (Ala.1988), and discussed in Pharmacia and how it calculated the attorney fee, we cannot ascertain whether the trial *46 court exceeded its discretion in awarding that fee. Therefore, we remand this cause to the trial court for the entry of an order explaining its decision and articulating its reasons for that decision. Due return shall be made to this Court within 42 days of the date of this opinion."
Madison County Dep't of Human Res. v. T.S., [Ms. 1081405, Oct. 23, 2009] 53 So.3d 32, 44-45 (Ala.2009)(emphasis added).
The trial court has made timely return of the case; however, on remand the trial court exceeded the scope of remand. Specifically, the trial court, on remand, was to explain, from the evidence already before it, its attorney-fee award. Instead, the trial court conducted a hearing and took new evidence. The trial court on remand was not free to consider new evidence to support its determination, and, in so doing, the trial court exceeded its limited jurisdiction on remand. This Court did not reverse the trial court's judgment on original submission; this Court remanded the case for the trial court to explain how it reached the conclusions stated in its order. Ex parte Queen, 959 So.2d 620, 622 (Ala.2006) ("[A] trial court does not have the authority to reopen for additional testimony a case that has been remanded to it, except where expressly directed to do so."); Ex parte Edwards, 727 So.2d 792, 794 (Ala. 1998) (holding that when an appellate court remands a case, the trial court's authority is limited to compliance with the directions provided by the appellate court).
We have no alternative but to remand this case for the trial court to comply with this Court's mandate in Madison County Department of Human Resources v. T.S., supra. Based on the evidence presented to it at the original hearing, the trial court must explain its decision awarding the attorney who represented T.S. a fee of $262,500 and articulate its reasons for that decision. Due return shall be made to this Court within 42 days of the date of this opinion.
REMANDED WITH DIRECTIONS.
COBB, C.J., and LYONS, WOODALL, SMITH, BOLIN, PARKER, MURDOCK, and SHAW, JJ., concur.
STUART, Justice.

On Return to Second Remand
The Madison County Department of Human Resources ("DHR"), T.S.'s legal guardian, appealed the trial court's judgment approving an attorney fee in the amount of $262,500, plus litigation expenses, for Doug Fees, the attorney who represented T.S. and F.M., T.S.'s mother, in a personal-injury action. On October 23, 2009, we remanded the case with directions for the trial court to issue an order explaining its approval of the attorney fee in light of this Court's decision in Pharmacia Corp. v. McGowan, 915 So.2d 549 (Ala.2004), and indicating how the trial court had calculated the attorney fee. Madison County Dep't of Human Res. v. T.S. Madison County Dep't of Human Res. v. T.S. [Ms. 1081405, October 23, 2009] 53 So.3d 38 (Ala.2009). The trial court's amended order filed in this Court on December 7, 2009, did not comply with this Court's remand order. We, therefore, remanded this cause to the trial court a second time to comply with this Court's mandate. Madison County Dep't of Human Res. v. T.S. (Ala.2010). The trial court, on return to second remand, has complied with our directions and has submitted an amended order, which states:
"This cause is before the court on remand from the Alabama Supreme Court. See Pocket No. 1081405 (Oct. 23, 2009; January 29, 2010).

*47 "This court adopts, as if fully set forth herein, its Final Order entered on March 6, 2009. In accordance with the Supreme Court's mandate, the present supplemental order further explains the basis for this court's award of attorney's fees. These findings are based upon testimony and evidence submitted at this court's December 12, 2008, and February 23, 2009, hearings, and the filings in this matter up to March 6, 2009.
"Findings of Fact
"1. Plaintiff T.S.'s mother first contacted [Fees] 21 months after the incident made the basis of plaintiff's complaint.
"2. [Fees] began intense work on the case immediately.
"3. The immediacy of the task made it likely that representing T.S. would preclude [Fees] from other employment.
"4. When [F.M.] retained [Fees], she had physical custody of her daughter T.S.; while DHR retained legal custody.
"5. DHR did not take legal action against the defendants in this case on behalf of T.S. There is no indication that DHR ever intended to take up this case on behalf of T.S. [Fees] was T.S.'s only advocate against Defendants.
"6. T.S.'s profound disability left her unable to provide meaningful information concerning the circumstances surrounding her severe burn injury.
"7. Defendant Carolyn Hodges, a key witness in the case, was criminally charged and unavailable to give a statement to [Fees].
"8. The criminal charges associated with this incident jeopardized potential recovery in the civil case.
"9. The professional relationship between [Fees], [F.M.,] and T.S. was limited only to this matter.
"10. This Court is aware that [Fees] has practiced law in Alabama since 1983 and that he and his law firm have a prominent reputation.
"11. The contingency fee charged in this area for the services of an attorney of education and professional experience similar to [Fees] is generally 40%.
"12. T.S.'s pre-existing disability increased the responsibility borne by [Fees].
"13. Initial investigation by [Fees] identified eleven potential defendants.
"14. [Fees] prepared and filed specific, individualized interrogatories, requests for production, requests for admissions, and deposition notices in order to develop theories of liability as to the various defendants.
"15. [Fees] was initially denied access to T.S.'s DHR file, including investigative documents produced to DHR by Defendant Ability Plus.
"16. [Fees] was nonetheless able to develop evidence sufficient to bring the parties to early mediation.
"17. In less than three months, [Fees] gathered and reviewed T.S.'s voluminous medical treatment and billing records; the investigative documents from local and state authorities; and consulted with experts with regard to the various aspects of the case. [Fees] consulted with safety expert John Frost; technical literature expert Harry Philo, Jr.; and reconstructive surgeon Dr. John LoMonaco. [Fees] also arranged preparation of a `Day-In-The-Life' film shown at mediation.
"18. [Fees] also issued subpoenas for T.S.'s medical records and photographs taken by her medical providers, as well as records and photographs of the Limestone County District Attorney, Limestone County Sheriff, and the DHR for Limestone, Madison, and Cullman Counties. *48 The subpoena responses included thousands of documents.
"19. [Fees] worked on the case every day from the date he was first retained (August 4, 2008) through the second pro ami settlement hearing (February 23, 2009), a period equivalent, in practical terms, to roughly two years at a normal 2-day-per-week pace, but vastly accelerated and intensified, and thereby far more demanding on counsel's time and resources.
"20. Because of the speed at which the case had to be prepared, it consumed a large portion of [Fees's] resources, diverting him from other potentially remunerative work until this time-intensive case could be resolved.
"21. The $787,500.00 settlement achieved by [Fees] exceeds nine (9) times the amount of special damages.
"22. The structured settlement coordinated by [Fees] provides lifetime benefits to T.S.
"Conclusions of Law
"1. In determining the reasonableness of an attorney's fee award, this Court must consider the following factors: (1) the nature and value of the subject matter of the employment; (2) the learning, skill, and labor requisite to its proper discharge; (3) the time consumed; (4) the professional experience and reputation of the attorney; (5) the weight of his responsibilities; (6) the measure of success achieved; (7) the reasonable expenses incurred; (8) whether a fee is fixed or contingent; (9) the nature and length of a professional relationship; (10) the fee customarily charged in the locality for similar legal services; (11) the likelihood that a particular employment may preclude other employment; and (12) the time limitations imposed by the client or by the circumstances. Van Schaack v. AmSouth Bank, N.A., 530 So.2d 740 (Ala. 1988).
"2. Although all the foregoing factors must be considered, not necessarily all need be applicable. Van Schaack v. AmSouth Bank, N.A., supra, 530 So.2d at 749.
"3. Nor are the foregoing twelve factors exclusive. Other pertinent criteria may also be considered. Pharmacia Corp. v. McGowan, 915 So.2d 549, 553 (Ala.2004).
"4. The Nature and Value of the Subject Matter of the Employment. Because of the immediacy of the deadline and the many logistical hurdles (a disabled minor client, unavailable witnesses and documents, an ongoing criminal prosecution), the nature of this case imposed special burdens upon [Fees]. So too did its potential value due to the severity of the burn injuries and T.S.'s handicap.
"5. The Required Learning, Skill, and Labor. The nature of this case presented special complications which were aggravated by the urgency of a rapidly expiring statute of limitations and an early mediation date. The circumstances of this case demanded particular learning, great skill, and intense labor.
"6. The Time Consumed. Considering the results achieved, the time spent by [Fees] was efficient and reasonable.
"7. Plaintiff's Counsel's Professional Experience and Reputation. The importance of this case required the efforts of an attorney with both experience and expertise. [Fees] is amply qualified in both.
"8. The Weight of Counsel's Responsibilities. The complications of this case were enormous. [Fees], as the sole advocate for T.S. against the defendants in *49 this case, bore especially heavy responsibilities.
"9. The Measure of Success Achieved. Given the difficulties involved, the potential for protracted litigation, and the attendant potential for enormous expenses as a result, [Fees] achieved a commendably swift and fair resolution.
"10. The Reasonable Expenses Incurred. The foregoing result was accomplished on a relatively shoestring budget: the sum total of all expenses ($29,315.99) is a mere 3.7% of the recovery ($787,500.00).
"11. Whether the Fee was Fixed or Contingent. In light of the many risks and difficulties evident from the outset, [Fees] took a great risk in agreeing to represent T.S. on a contingency fee basis. His willingness to reduce his usual contingency fee from 40% to one-third, moreover, exhibits a laudable sacrifice for T.S.'s benefit.
"12. The Nature and Length of the Professional Relationship. T.S.'s disability affected [Fees's] professional relationship with her by increasing his fiduciary responsibilities, and thus the burdens (legal and logistical alike) he had to confront. Furthermore, [Fees] agreed to represent T.S. only in the present matter. Hence, his risk was all the greater because a case such as this does not generate revenue in the form of future patronage; thus [Fees] had no such financial cushion in the case at bar.
"13. The Fee Customarily Charged in the Locality for Similar Legal Services. The one-third contingency fee arrangement in which [Fees] undertook to represent T.S. against these defendants is below the contingency fee customarily charged in this locality.
"14. The Likelihood that the Employment May Preclude Other Employment. Because of the time constraints faced in this case, it was highly likely that representing T.S. would preclude [Fees] from other gainful employment. Subsequent events, moreover, confirmed this prognosis, for the efforts entailed in producing a successful recovery on T.S.'s behalf diverted [Fees] from other work.
"15. The Time Limitations Imposed by the Client or by the Circumstances. The brevity of time remaining before the statute of limitations expired when [Fees] was retained by T.S.'s mother placed extra pressure on counsel, increased the premium for efficiency, disrupted [Fees's] handling of other cases, and made the success achieved all the more reasonable.
"16. Other Factors: Special Complications and Challenges. DHR's repeated refusal to become involved in the case early on, and its subsequent obstruction of efforts to prosecute the case against the defendants, presented special complications and challenges which were successfully overcome by [Fees].
"17. Having undertaken unusual risk in this case with no guarantee of recovery, [Fees] had, by the time of mediation, advanced over $17,000.00 in an effort to achieve a successful outcome.
"18. When one then factors in the contingency risk, the effort, the sacrifices and the hardships undertaken by [Fees]; his proficiency, prominence, and expertise; the exceptional success achieved, especially given the economy of cost; and all other criteria discussed above, an award of $262,500 in attorney's fees is fair, reasonable and eminently justified under all the circumstances."
The foregoing order articulates the decision made by the trial court with regard to the attorney fee awarded, the reasons supporting *50 the decision, and how the trial court calculated the attorney fee; therefore, we can now conduct our review to address DHR's contention that the attorney fee is excessive.
We have carefully reviewed the record. In November 2006, T.S., a disabled minor residing in a group home run by Ability Plus, Inc., was placed in a whirlpool tub filled with hot water. T.S. suffered severe burns and required extensive medical treatment. In August 2008, F.M., T.S.'s mother, retained Fees to represent her and T.S. in seeking compensation for their injuries. F.M. entered into a contingency-fee contract with Fees that provided that for representing T.S. and F.M. Fees would receive 33 1/3% of the total recovery, plus litigation expenses. Fees filed a complaint, identifying 11 named defendants and other fictitiously named parties, within three weeks of being retained. Within days of being served with the complaint, counsel for Ability Plus contacted Fees suggesting that the parties engage in mediation to avoid expensive discovery and litigation. In November 2008, Ability Plus, the operator of the group home; George and Ronda Roberts, the owners of the property on which the group home is located; and Cora, Inc., d/b/a/ Mr. Rooter, the company that had installed a heater on the whirlpool tub just before T.S. was injured, engaged in mediation with Fees on behalf of T.S. and F.M. and entered into a proposed settlement of $787,500.
The evidence in support of Fees's attorney fee includes an affidavit from Fees, two affidavits from local counsel in the area, and the court file. Fees stated in his affidavit:
"1. I reside in Huntsville, Alabama. I graduated from the University of Alabama School of Law in 1983, and was licensed to practice in Alabama in September 1983. For the past 25 years, my practice has focused exclusively in representing victims of serious injury or death due to the wrongful conduct of others.
"2. On August 4, 2008, I was retained to represent [F.M. and T.S.]. We agreed upon a 33-1/3[%] contingency fee, plus expenses, with the fee for services to be paid only if there was a recovery.
"3. The expenses incurred in bringing about a successful recovery are the usual and customary expenses my firm advances on cases involving serious injury or death.
"4. The total recovery in this case was $787,500.00. Pursuant to the Professional Service Agreement executed by myself and [F.M.], my fee constitutes 33-1/3% of that recovery or $262,500.00, plus expenses."
Fees also submitted the affidavits of two attorneys in the Huntsville area. Both attorneys provided personal information indicating that they are qualified to provide an opinion as to the reasonableness of an attorney fee and expenses arising out of the prosecution of a personal-injury case in the Huntsville area and that they are "thoroughly familiar with the usual and customary charges for legal services rendered by attorneys in personal injury civil litigation." They aver:
"Based upon a review of selected pleadings, orders, and discovery, [we are] familiar with the legal services rendered by [Fees] in the above-styled case.
"5. [We] write this affidavit in support of [Fees's] request for attorney's fees of 33 1/3% of $787,500.00 ($262,500.00), plus expenses. These types of cases are typically taken on a percentage-contingency basis. The customary contingency fee arrangement is 33 1/3 to 40%, plus expenses. Particularly complex personal injury cases are often taken on a 50% *51 contingency fee arrangement, plus expenses.
"Facts Relied Upon in Reaching Opinions
"6. In addition to speaking with [Fees], [we] have reviewed Plaintiffs' motion to add DHR as an indispensable party; DHR's objection to the settlement; and correspondence between [Fees] and counsel for DHR, in order to familiarize [ourselves] with the work performed by [Fees] in this action.
"7. Although the injury made the basis of this suit occurred in November, 2006, [Fees] was only contacted by [F.M., T.S.'s] mother, on August 1, 2008. Due to the rapidly approaching statute of limitations, [Fees] began intense work on the case immediately.
"8. Because [T.S] was in the legal custody of DHR at the time of her injury, [F.M.] was unable to provide much information regarding the facts and circumstances of [T.S.'s] injury. [Fees] was therefore required to devote time and expense to investigating the incident and identifying the appropriate parties.
"9. It is customary for attorneys to retain professional investigators to assist in such tasks as identifying, locating, and interviewing witnesses; gathering documentary evidence, service of process; and a variety of other tasks. This is a reasonable expense.
"10. Investigation ultimately identified eleven potential defendants. Further investigation was required in order to determine the legal designation and locations of each of the potential defendants.
"11. [Fees's] preliminary investigation revealed evidence to support counts for negligence/wantonness, negligence/wantonness per se, premises liability, products liability, negligent hiring/retention, negligent/wanton supervision, vicarious liability, and breach of implied warranty.
"12. In addition to the complaint, [Fees] prepared interrogatories, requests for production, requests for admissions, and deposition notices in order to develop discovery from each of the defendants to support the averments of the complaint. Service copies of each of these documents were prepared for service on defendants by certified mail.
"13. After the action was filed, [Fees] was contacted by New Jersey-based defense counsel for Ability Plus. Defense counsel suggested early mediation of the case in an effort to avoid incurring substantial discovery expenses. [Fees] agreed. Mediation was scheduled for November 5, 2008.
"14. For mediation to be successful, plaintiffs must develop as much evidence as possible in order to persuade defendants of the value of the case. In a personal injury matter, plaintiff's counsel must gather medical bills, medical records and histories, investigative documents from local and state authorities, and consult with experts in the field. All of this information must be provided to opposing counsel prior to mediation so that they can evaluate the plaintiffs' case, and make a decision regarding its settlement value. With mediation quickly approaching, [Fees] and his staff scrambled to obtain all of the available supporting documentation. This required in-house copying of thousands of documents, which were sent via overnight mail to Ability Plus's defense counsel in New Jersey, delivered by hand to [Cora, Inc., d/b/a/] Mr. Rooter's defense counsel in Huntsville, and mailed to the property owner's defense counsel in Tuscumbia, Alabama.
"15. In preparation for mediation, [Fees] consulted with safety expert John *52 C. Frost in order to establish the liability of defendant Mr. Rooter, installer of the water heater. Mr. Frost reviewed the investigative, technical, and safety research files in the case, and personally inspected the water heater, in order to develop expert opinions as to the liability of the water heater's installer and manufacturer, as well as the safety alternatives available to group homes.[1]
"16. Harry Philo, Jr., master librarian and expert in the field of researching technical literature, was retained to conduct a search for available literature relating to the liability of the installers of water heaters, hot water heater safety, and plumbing safety. In addition to the researcher's time, obtaining primary source material such as trade journals, code books, professional treatises and guidelines of safety organizations requires such expenses as copying and database access fees associated with library research. All of this research is customary and reasonable in a case involving the liability of an industry or trade, such as the plumbing industry.[2]
"17. [Fees] also consulted with Dr. John LoMonaco, a nationally recognized specialist in the field of reconstructive surgery, in order to develop evidence of [T.S.'s] anticipated future medical expenses.[3]
"18. [Fees] prepared subpoenas to obtain [T.S.'s] medical records, billing, and photographs taken by her medical providers. Subpoenas were also prepared and issued to the Limestone District Attorney, Limestone County Sheriff, and the Department of Human Resources for Limestone, Madison, and Cullman counties. The subpoena responses resulted in thousands of documents which [Fees] reviewed and culled for pertinent information.
"19. Photographs of [T.S.'s] burn injuries were crucial evidence in this case, and [Fees] spent substantial time tracking down and obtaining injury photographs from Athens Limestone Hospital, Limestone County Sheriff and District Attorney's offices, Madison County DHR, Children's Hospital in Birmingham, and various other medical providers. These photographs were subsequently reviewed, reproduced, and provided to defense counsel.
"20. The documentary evidence in this case was ultimately so voluminous, that the mediation presentation was packaged in three bound volumes. This three volume package was provided to each of the defense attorneys for Ability Plus, Mr. Rooter, and [George and Ronda Roberts], as well as the mediator. A copy was also prepared for use by [Fees] at mediation. All of the copying and binding was done in-house by [Fees's] staff, rather than a professional copy shop, which represents a substantial savings in copying expense.
"21. This case was resolved at mediation with a structured settlement. Because of [T.S.'s] lifetime permanent disability, it was essential to [T.S. and F.M.] that [T.S.'s] settlement funds be protected with a Special Needs Trust. Trust work is a specialized area of law, and professionals and attorneys with expertise in that area are both reasonable and necessary. [Fees] initially estimated this expense to be $7,500.00, but due to the complexity of the settlement arrangements *53 and additional work performed subsequent to DHR's objections to the settlement, that expense has risen to $12,000.00
"22. [Fees] undertook the risk in his case with no guarantee of recovery for time and expenses. [Fees's] law firm has thus far advanced over $17,000 in an effort to bring this case to a successful resolution. This is a reasonable figure given the facts of the case, investigation conducted, unusual medical circumstances of the injured [T.S], and the speed at which the case had to be prepared.
"23. The speed at which this case had to be prepared meant that it required a great deal of resources of [Fees] to be concentrated on this one case. As a result, [Fees] was unable to take on other potentially remunerative work until this time-intensive case could be resolved.
"24. [Fees] has continued to work on this case in an effort to have the settlement approved by the court.
"25. Accordingly, given the facts and circumstances of the action, the risks undertaken by [Fees], and the favorable results obtained, an attorney's fee in the amount of one-third of the total value of the recovery, reduced by $50,000.00 [or $212,500.00], plus expenses, is a reasonable and just fee."

(Footnotes omitted; emphasis added.)
At the close of the hearing at which the attorney fee was addressed, the following occurred:
"THE COURT: Let me be clear, Mr. Fees. In support of your petition for fee, there's no testimony other than what you've offered as affidavits is what you're saying?
"FEES: Right."
DHR contends that the trial court exceeded the scope of its discretion in awarding Fees an attorney fee in the amount of $262,500, which is 33 1/3% of the total settlement of $787,500.
Initially, we note that DHR does not contest that Fees is entitled to 33 1/3% of the $50,000 awarded to F.M. out of the total settlement of $787,500. DHR stated in argument before the trial court and concedes in brief to this Court that the contingency-fee contract between Fees and F.M. is binding as to the award of attorney fees for his representation of F.M. Therefore, this amount is not at issue.
Additionally, although DHR implies in its arguments that the litigation expenses of $29,315.99 are excessive, DHR does not develop its objection to the expenses with specificity. Fees attached detailed invoices for the litigation expenses. We note that these expenses included an attorney fee of $12,000 for Cheryl Baswell-Guthrie, the attorney who created the special-needs trust for T.S. We have reviewed the invoices, as well as considered the statements made by Baswell-Guthrie at the hearing explaining the difficulties encountered in establishing the trust for T.S. In light of DHR's failure to develop this issue and because nothing before us indicates that the litigation expenses are excessive, we conclude that the trial court did not exceed the scope of its discretion awarding litigation expenses of $29,315.99.
With regard to the attorney fee for that portion of the settlement awarded to T.S., a minor ($737,500), the contingency-fee contract is not binding. Our caselaw clearly establishes that when an attorney represents a minor, the attorney is entitled to the reasonable value of his services from the amount recovered as a result of his representation. Ex parte Peck, 572 So.2d 427, 428 (Ala. 1990) ("In Malone v. Malone, 491 So.2d 932 (Ala.1986), this *54 Court reaffirmed `the general rule recognized by a majority of jurisdictions that parents, as next friends, are authorized to contract for payment of a reasonable fee for legal services rendered on behalf of their minor children.' 491 So.2d at 933." (emphasis added)). At the time the contingency-fee contract between F.M. and Fees was executed, DHR was T.S.'s legal custodian. Statements were made during the hearings and in the pleadings indicating that DHR agreed to allow Fees to pursue the claims for T.S. Nothing in the record indicates that DHR agreed to an attorney fee of 33 1/3% of the total settlement for Fees's representation of T.S. Regardless of whether DHR agreed to the contingency-fee contract or the fact that F.M. executed a contingency-fee contract that stated that Fees would receive 1/3% of the total recovery in this case, Fees is entitled to only a reasonable fee for his representation of T.S.
"The determination of whether an attorney fee is reasonable is within the sound discretion of the trial court and its determination on such an issue will not be disturbed on appeal unless in awarding the fee the trial court exceeded that discretion. State Bd. of Educ. v. Waldrop, 840 So.2d 893, 896 (Ala.2002); City of Birmingham v. Horn, 810 So.2d 667, 681-82 (Ala.2001); Ex parte Edwards, 601 So.2d 82, 85 (Ala.1992), citing Varner v. Century Fin. Co., 738 F.2d 1143 (11th Cir.1984).
"This Court has set forth 12 criteria a court might consider when determining the reasonableness of an attorney fee:
"`(1) [T]he nature and value of the subject matter of the employment; (2) the learning, skill, and labor requisite to its proper discharge; (3) the time consumed; (4) the professional experience and reputation of the attorney; (5) the weight of his responsibilities; (6) the measure of success achieved; (7) the reasonable expenses incurred; (8) whether a fee is fixed or contingent; (9) the nature and length of a professional relationship; (10) the fee customarily charged in the locality for similar legal services; (11) the likelihood that a particular employment may preclude other employment; and (12) the time limitations imposed by the client or by the circumstances.'

"Van Schaack v. AmSouth Bank, N.A., 530 So.2d 740, 749 (Ala.1988). These criteria are for purposes of evaluating whether an attorney fee is reasonable; they are not an exhaustive list of specific criteria that must all be met. Beal Bank v. Schilleci, 896 So.2d 395, 403 (Ala.2004), citing Graddick v. First Farmers & Merchants Nat'l Bank of Troy, 453 So.2d 1305, 1311 (Ala.1984)."
Pharmacia Corp. v. McGowan, 915 So.2d 549, 552-53 (Ala.2004).
Accordingly, we will now consider whether the trial court exceeded the scope of its discretion in awarding Fees an attorney fee in the amount of 33 1/3% of the total settlement for his representation of T.S.

(1) The nature and value of the subject matter of the employment.
The evidence indicates that this cause of action was based on personal injury and product liability.[4] When Fees accepted the case, he knew that a severely disabled child residing in a group home had been placed in a whirlpool bath, had suffered severe burns, and was faced with a lengthy *55 recovery. Although T.S.'s disability made it difficult for Fees to learn basic facts from her about the cause of action, nothing before us indicates that the cause of action involved novel, difficult, or complex legal questions or facts. Additionally, nothing before us indicates that Fees engaged in inordinate measures or persistence or that he had difficulty in discovery that required excessive diligence in reaching a resolution of this case.

(2) The learning, skill, and labor requisite to its proper discharge.
The affidavits from Fees and the two other local attorneys, as well as the observations of the trial court, indicate that Fees possessed the skills necessary to represent T.S. and to resolve this case. Additionally, the record indicates that when Fees recognized that expert assistance was needed to establish a special-needs trust for T.S., he hired Cheryl Baswell-Guthrie, an attorney specializing in the field.

(3) The time consumed.
"[I]t is generally recognized that the first yardstick that is used by the trial judges is the time consumed" when determining the reasonableness of an attorney fee. Peebles v. Miley, 439 So.2d 137, 141 (Ala.1983). Although the affidavits and the findings of the trial court state that Fees spent an inordinate amount of time on T.S.'s case, it is troublesome that the record contains no evidence of the number of hours per day or per week Fees spent on behalf of T.S. during the 14-week period from his initial meeting with F.M. until a tentative settlement was reached. The record does indicate that F.M. met with Fees on August 4, 2008, and that a proposed settlement was reached on November 6, 2008. In addition to representing T.S. and F.M. at two hearings, Fees filed the following pleadings on behalf of T.S.: a complaint, a motion for a protective order, pursuant to the Health Insurance Portability and Accountability Act of 1996 ("HIPAA"), a motion to compel DHR to produce an investigative report, a motion to appoint a guardian ad litem and pro ami, a motion to add DHR as a party, a reply to DHR's refusal to consent to the settlement, a petition for approval of pro ami, a motion in support of the attorney award and expenses, and a motion in opposition of DHR's motion to alter, amend, or vacate the judgment. Additionally, the record contains the following pleadings, which we recognize Fees reviewed: an answer filed by defendant Mr. Rooter, a motion for a HIPAA order filed by Mr. Rooter, a motion to quash a subpoena filed by the Limestone County district attorney, an objection to a subpoena and motion for a protective order filed by DHR, a HIPAA order, an order requiring DHR to produce its files, DHR's response to the motion to compel, a sworn petition seeking establishment of a special-needs trust prepared by Baswell-Guthrie, a petition to intervene filed by the Center for Special Needs Trust Administration, Inc., DHR's response indicating its refusal to consent to the proposed settlement, a motion to set a hearing filed by the guardian ad litem, DHR's brief in opposition to the attorney fee, the final order, and DHR's motion to alter, amend, or vacate the approved attorney fee. The record also indicates that Fees subpoenaed and acquired T.S.'s records from various health-care facilities and county and State DHRs, as well as investigative reports of the accident from local and State investigative agencies. He also hired and consulted with three experts, acquired photographs of the accident and injuries, assimilated materials for mediation, and represented T.S. in mediation.
A review of the evidence, the pleadings in the record, and the submitted litigation expenses indicates that Fees spent time *56 working on the case, drafting and filing pleadings and discovery requests, conducting discovery, preparing for and attending mediation, and conducting research during the pendency of the action. Nothing indicates the amount of time spenta detailed explanation of the hours Fees expended on T.S.'s caseor that any of these actions were exceptionally time-consuming or resulted in Fees working only on T.S.'s case from the time he met with F.M. until a tentative settlement was reached 14 weeks later. Additionally, it is worth noting that Ability Plus's counsel instigated mediation and that Fees was aware of the insurance policy limits; therefore, Fees did not have to engage in extraordinary effortstime to compel an early settlement of the case and did not have to engage in trial preparation.
The evidence supporting this factor is limited, and the absence of any time records makes it difficult to conclude that the fee of $262,500 is reasonable.

(4) The professional experience and reputation of the attorney.
The affidavits of Fees and of the local attorneys and the trial court's findings indicate that Fees is an experienced professional with regard to causes of action based on personal injury and product liability. However, as previously noted, nothing in the record before us indicates that unique skills or experience was required to obtain a resolution of T.S.'s case. Indeed, Ability Plus initiated the settlement process by offering early mediation in an attempt to avoid extended, expensive discovery and litigation; therefore, the evidence minimally supports a finding that Fees obtained a settlement more quickly in light of his experience and reputation.

(5) The weight of his responsibilities.
In light of T.S.'s disability and the facts of the accident, Fees's risk was not substantial. When balancing the gravity of representing a client like T.S., the fiduciary duty to such a client, and the need to obtain the best possible award for the client against the compelling facts of this personal-injury action, Fees's responsibility was great, but his risk of nonrecovery was minimal.

(6) The measure of success achieved.
Fees obtained a settlement proposal that F.M. and the guardian ad litem appointed by the court to represent T.S. agree is fair. Indeed, DHR does not contest the amount of the proposed settlement.

(7) The reasonable expenses incurred.
The record contains a litigation-expense report that is supported by various invoices. The expenses amount to 3.7% of the total settlement and, as previously mentioned, include the $12,000 attorney fee for Baswell-Guthrie for establishing the special-needs trust. The record indicates that the expenses were reasonable.

(8) Whether a fee is fixed or contingent.
Fees agreed to represent T.S. and F.M. on a contingent-fee basis. We recognize that when an attorney accepts a client on a contingent-fee basis, the attorney assumes the risk of nonpayment for expenses and is acting at his own peril. "If someone is willing to take the great risk of giving up the sure quantity for the uncertain, and wins, then the uncertain prize should be worth more than the certain one." Peebles v. Miley, 439 So.2d at 142. Therefore, this risk must be considered when determining the reasonableness of a fee. In this case, the attorney fee awarded ($262,500) results in Fees receiving $18,750 per week for his 14-week representation of T.S. A careful balance must be struck between the need to maintain public confidence in the fairness and integrity of the bar against the need to encourage attorneys to take doubtful cases and to pursue them vigorously. When Fees accepted *57 this case, the known facts indicated that there was little risk involved in the litigation, i.e., that an award for damages to some degree was a virtual certainty. We further note that the majority of the expenses were incurred after Ability Plus indicated its willingness to engage in early mediation. Therefore, the risk of Fees not recovering expenses was minimal, and the fact that Fees was acting on a contingent-fee basis deserves little weight in determining the reasonableness of the fee.

(9) The nature and length of a professional relationship.
Nothing in the record indicates that the relationship between T.S. and Fees is continuing; however, we note that this settlement is pro tanto and that Fees reserved his right to continue pursuing T.S.'s product-liability claims.

(10) The fee customarily charged in the locality for similar legal services.
The affidavits of the local attorneys indicate that the attorney fee requested by Fees for representing F.M. and T.S. in this personal-injury action is within the range of a contingency fee customarily charged in the locality for representing a client in a personal-injury action. The affidavits and the record, however, do not indicate the fee customarily considered reasonable for the representation of a child in a personal-injury action. However, the affidavits of the local attorneys do indicate that the attorney fee awarded Fees should be reduced by $50,000, indicating that the local attorneys do not view an attorney fee of 33 1/3% of the total settlement to be reasonable in this case and that a reduction in the attorney fee is proper.

(11) The likelihood that a particular employment may preclude other employment.
Nothing in the record indicates that this case precluded Fees from other employment or required Fees to rearrange other court dates, to cease working on other cases, or to hire additional staff, etc. We recognize that T.S.'s case required immediate preparation to file a complaint in light of the statute of limitations and to engage in early mediation to avoid a prolonged, expensive discovery process and litigation; however, nothing in the record indicates that the discovery for the filing of the complaint or the preparation for mediation was so complex or cumbersome as to preclude Fees from working on other cases while he was working on T.S.'s case. Indeed, this factor can be afforded little weight because there is more speculation than evidence indicating that Fees's work on T.S.'s case precluded his taking other employment.

(12) The time limitations imposed by the client or by the circumstances.
When Fees accepted T.S.'s case, he knew that the statute of limitations for the filing of the personal-injury action would run in approximately three months. Fees investigated the action and drafted and filed a complaint within three and one-half weeks of accepting T.S.'s case. Therefore, he accomplished a substantial amount of work in a very limited amount of time. However, the deftness of the filing of the complaint also indicates that discovery of the information supporting the complaint was not difficult, that the legal issues involved were not complicated, and that Fees was able to work within the time limitations. Likewise, the fact that a settlement was reached within approximately two and one-half months of filing the complaint indicates that Fees was able to accomplish a substantial amount of work, but it also indicates that the discovery of information supporting a settlement was not difficult to obtain and that Fees was able *58 to work within the time restriction.[5]
"As in most cases, the facts play an important part in establishing the result to be reached." Peebles v. Miley, 439 So.2d at 139. Given the facts of this case, the arguments asserted on appeal, the paucity of evidence as to the hours Fees expended on the action, the lack of legal complexity in the cause of action, the lack of the genuine risk of no recovery, and the open willingness of the defendants to initiate and to enter into early mediation to avoid litigation and its burdens, DHR has demonstrated that the trial court exceeded the scope of its discretion in awarding Fees an attorney fee of $262,500, which is 33 1/3% of the total settlement of $787,500.
We are not saying that Fees did not render a favorable legal service for T.S. in the assertion of her claims, a service for which he should be compensated. However, an award of one-third of the value of the total settlement is far out of proportion to a reasonable fee for the services rendered. Indeed, in this case certain facts stand out as requiring a downward modification of the fee. First, there has been an inadequate showing of the hours worked by Fees over the 14-week period from the initial consultation on T.S.'s case to the settlement reached during mediation or that Fees's work on T.S.'s case precluded him from attending to other cases. We cannot overlook or reward Fees's failure to provide the time records for his representation of T.S. This case involved a minor, and, consequently, special considerations reflecting excessive concern of the law for her interests were implicated, necessitating a departure from the practices routinely followed where adults are being represented. Nowhere does the record reference the hours spent by Fees or what percentage of Fees's total time during the 14-week period was spent working on T.S.'s case.
Second, success in this case seems to have been more a certainty than a possibility, or, put another way, the risk of failure (i.e., nonrecovery) appears to have been negligible. For example, we cannot ignore the compelling facts the case presented, that uncertainty as to liability was limited, or the fact that within days of *59 being served the complaint counsel for Ability Plus contacted Fees and suggested that the claims be settled quickly through mediation. We recognize that the favorable settlement of lawsuits often turns on the skill and thoroughness with which plaintiff's counsel undertakes discovery; however, in this case it appears that Fees knew the limitations of the insurance policies and knew, therefore, that recovery would be limited. We further recognize that hindsight is involved in the above analysis. In determining a reasonable fee for services performed on behalf of a minor, however, the proper temporal focus is the present; thus, hindsight is proper indeed.
"`[A] fee is clearly excessive when after a review of the facts, a lawyer of ordinary prudence would be left with a definite and firm conviction that the fee is in excess of a reasonable fee.'" Peebles v. Miley, 439 So.2d at 143. In light of the facts of this case, the trial court exceeded the scope of its discretion because an attorney fee for the representation of T.S. of 33 1/3% of the total settlement is not reasonable. Indeed, the affidavits from the two local attorneys submitted by Fees in support of his fee state that the proposed attorney fee should be reduced by $50,000. Given the facts of this case and the lack of evidence supporting Fees's requested fee, we conclude that a reasonable attorney fee for Fees's representation of T.S. is 20% of T.S.'s portion of the settlement.[6]
Based on the foregoing, the judgment of the trial court with regard to the attorney fee is reversed, and this case is remanded for proceedings consistent with this opinion.
REVERSED AND REMANDED.
BOLIN, PARKER, and SHAW, JJ., concur.
LYONS, SMITH, and MURDOCK, JJ., concur in the result.
COBB, C.J., and WOODALL, J., dissent.
WOODALL, Justice (dissenting).
In support of his request for an attorney fee for his representation of T.S., Doug Fees submitted the affidavits of two experienced local attorneys. Both attorneys expressed the opinion that a contingency fee in the amount of one-third of the recovery, reduced by $50,000, would be reasonable. Such a fee would amount to $212,500. In my opinion, the trial court exceeded its discretion in awarding a fee in excess of that amount. Therefore, I have no problem with the Court's decision to reverse the trial court's judgment doing so. However, I cannot agree with the decision of the main opinion that, based on the record before this Court, a reasonable fee is 20% of T.S.'s portion of the settlement ($147,500). Therefore, I dissent from the decision to reverse the trial court's judgment and to remand the case for the entry of a fee award in that amount.
As stated in the main opinion: "`[I]t is generally recognized that the first yardstick that is used by the trial judges is the time consumed' when determining the reasonableness of an attorney fee. Peebles v. Miley, 439 So.2d 137, 141 (Ala.1983)." 53 So.3d at 55. I agree that "it is troublesome that the record [properly before this Court] contains no evidence of the number of hours ... Fees spent on behalf of T.S. ..." 53 So.3d at 55. Further, I cannot disagree that "the absence of any time *60 records makes it difficult to conclude that the fee of $262,500 is reasonable." 53 So.3d at 56. However, the absence of such records makes it equally difficult for me to conclude that a fee of $212,500 would be unreasonable or that the fee set in the main opinion is reasonable.
Instead of setting a fee without sufficient evidence of the "first yardstick" time consumed during the representationI would remand the case to the trial court for any further proceedings necessary to develop an adequate factual basis for evaluating the fee request. As this Court knows, Mr. Fees's itemized time records were untimely submitted to the trial court after the first remand of this matter. I suspect the majority of the Court may feel that another remand would "reward Fee's failure to provide the time records for his representation of T.S.," 53 So.3d at 58, before the first hearing regarding his fee request. However, I see a remand as the only means by which to set a reasonable fee based, not upon what the main opinion acknowledges is a "lack of evidence," 53 So.3d at 59, but, instead, upon an adequate factual record.
COBB, C.J., concurs.
NOTES
[1] The record indicates that Medicaid's lien has been reduced to $72,426.
[2] The $12,732.50 fee of the attorney who created the special-needs trust was included in the litigation expenses.
[3] It appears that Fees is referring to DHR's refusal to produce from its file, without specific direction from the court, a document created by counsel for Ability Plus about the incident resulting in T.S.'s injuries and marked "confidential."
[4] See supra note 1.
[1] The invoice for Frost's services indicates that he spent 5.25 hours on T.S.'s case.
[2] The invoice for Philo's fee indicates that Philo spent 13 hours on T.S.'s case.
[3] The record does not contain a detailed invoice indicating the number of hours Dr. LoMonaco spent evaluating T.S.'s injuries and condition.
[4] The record indicates that this settlement is pro tanto and that Fees may still pursue the product-liability claims.
[5] We note that Fees makes much ado about DHR "thwarting" discovery, prosecution, and settlement of T.S.'s case. Specifically, he objects to DHR's "refusal" to disclose a document created by general counsel for Ability Plus. The record indicates that on or about October 21, 2008, DHR was served a subpoena duces tecum requiring DHR to produce its records and files on T.S. On October 22, 2008, DHR filed an objection to the subpoena, requesting an in camera inspection of the requested material and protection of the confidentiality of the records. The trial court issued the order for in camera inspection. DHR produced the files, with the exception of one document, and the trial court inspected the documents in camera and on October 24, 2008, issued an order for their dissemination to the parties. The document DHR did not produce was created by Ability Plus's general counsel, appears to have been an investigative report of the accident, and was marked as confidential work product. DHR contacted Fees, informing him of the document, that it may be a "smoking gun," and that it may be work product. DHR also told Fees that it was going to contact Ability Plus's general counsel before producing the document. Ability Plus asserted the work-product privilege, and DHR informed Fees that he would need to move to compel to obtain the document. On October 30, 2008, Fees moved to compel production of the document. On October 31, 2008, DHR responded, indicating that it took no position on the discoverability of the document and that it would produce it for in camera inspection. Before the trial court ordered DHR to produce the document, however, the case settled. Although the record does indicate that DHR was a reluctant participant in this action, nothing indicates that DHR unreasonably "thwarted or obscured" discovery, prosecution, or settlement of T.S.'s case or that its actions with regard to the document created by Ability Plus's counsel were not prudent.
[6] Our decision results in Fees being awarded an attorney fee of $16,665 (33 1/3% of $50,000) for his representation of F.M., an attorney fee of $147,500 (20% of $737,000) for his representation of T.S., and reimbursement for litigation expenses in the amount of $29,315.99.