# Johnson v. Blair, Adm'r.

*Bill in Equity for Foreclosure of Mortgage.*

(Decided November 28, 1901.)

1. *Mortgagee; when estopped to claim attorney's fee on foreclosure.*
   Where there is evidence tending to show that the mortgagee had not desired the payment of the principal of the mortgage indebtedness during the life of the mortgagor, having allowed it to run on five years after its maturity, upon payment of the annual interest; and where, a few days after the death of the mortgagor, his son-in-law and the husband of the only heir and distributee of his estate had a conversation with the mortgagee, in which he requested her to allow the payment of the principal to be still further deferred, but at the same time stated that he was ready and able to pay the debt then if she insisted, and the mortgagee stated that

[Johnson v. Blair, Adm'r.]

she would give the extension if her attorney considered the security good, and promised and assured him that, if she decided that she wanted the principal paid then, she would give him notice of her desire and would not put him to the expense of court costs, attorney's fees, and the like, and he relied on this promise and heard nothing more of the matter until about a year later, when the mortgagee's attorney called on him to pay the loan and the attorney's fee, and he then tendered the loan, principal and interest: *Held*: That the mortgagee was estopped from claiming the attorney's fee.

APPEAL from Colbert Chancery Court.

Heard before Hon. W. H. SIMPSON.

The bill was filed by Mrs. Kate M. Johnson to foreclose a mortgage which had been executed to her by R. L. Ross. Ross' only heir and devisee, Mrs. Blair, and her husband, H. W. Blair, who was administrator of Ross' estate, were made parties defendant. The answer and plea set up a tender of the principal and interest due on the mortgage, and an agreemnt made by Blair with Mrs. Johnson by which it was claimed that she was estopped to claim attorney's fees.

The note secured by the mortgage contained a stipulation by which Ross agreed to pay "all costs of collecting, including a reasonable attorney's fee if not paid at maturity, whether collected with or without suit."

The opinion states the material facts.

The chancellor sustained the plea of tender and rendered a decree dismissing the bill, from which complainant appeals.

KIRK & RATHER, for appellant.

WILHOYTE & NATHAN, *contra*.

McCLELLAN, C. J.—It is of no consequence that H. W. Blair had not qualified as administrator of the estate of R. L. Ross at the time, a few days after Ross' death, of his first interview with Mrs. Johnson. He was the husband of the only heir and distributee of the estate, he was properly looking after its affairs and he

9s

[Johnson v. Blair, Adm'r.]

was recognized by Mrs. Johnson as representing the estate. The evidence satisfactorily shows that the debt owed by Ross to Mrs. Johnson while maturing July 18, 1894, had been allowed to run along for five years after that, Ross paying the interest promptly year by year; and by this and otherwise it is made to appear that Mrs. Johnson had not up to the time of Ross' death desired the payment of the principal. She had money to lend and it was the interest she wanted and apparently not the principal so long as the security was good. When Blair went to see her, he had every reason to believe that she was in no haste to collect the principal. She said as much to him and further that if the security was sufficient she would comply with his request that the payment of the principal be still further deferred. She thought the security was adequate, but preferred to have the advice of her attorney upon that, and suggested that Blair see the attorney. At this interview between Mrs. Johnson and Blair she was given to understand that if she did want the debt then paid Blair was ready and able, and would then pay it. It was not then determined whether she would let the debt run on as she had done before or not. Blair, however, sought to provide for the contingency of her concluding not to do so by assuring her if she did so conclude that he would pay upon notice of the fact from her, asked her to give him such notice so that he could pay it without incurring any costs of suit, attorney's fees and the like, and she thereupon assured and promised him that she would not put him to any such expense without first notifying him so as to afford him the opportunity—the clear intendment is—to repay the loan without incurring any expense about it. He relied upon this promise and assurance. Because of it he did not pay the debt, supposing, as he on all the evidence had a right to suppose, that the loan was to continue as he had requested it should. He knew no better until nearly a year afterwards when her attorney called on him to pay the loan *and the attorney's fee.* He then promptly tendered the loan, principal and interest. The tender was declined because it did not include the attorney's fee. On this state of case we concur with the chancellor in holding that it

[United States Savings & Loan Company v. Leftwich.]

would be contrary to equity and good conscience to allow Mrs. Johnson to recover the attorney's fee. Her conduct, her assurances and promises to afford him the opportunity to discharge the whole obligation by paying the principal and interest of the loan, taken in connection with his reliance thereon, and his being thereby induced to forego the payment of the principal and interest when he had the clear legal right to pay it without incurring any liability for attorney's fee, *estops* her now to claim such fee. She cannot in a court of conscience and equity thus induce him to forego the position of vantage in respect of the fee which he occupied, and then avail herself of it to put upon him a burden which she had undertaken should not fall upon him until after he had the opportunities incident to his original position, and had failed to employ them to relieve himself from such burden.

Let the decree of the chancery court be
Affirmed.