These appeals are from the judgment of the Circuit Court of Pike County awarding an attorney's fee to the firm of Orme and Faulk in the amount of $27,000.00, for services allegedly inuring to the benefit of the beneficiaries of a trust established by the will of Robert Murphree, deceased, and awarding the trustee of that trust a fee for its services in the amount of $29,643.13. The trial court also ordered that First Farmers and Merchants National Bank, the trustee, which was about to merge with First Alabama Bank of Troy, and no longer exist, would be allowed to continue as a successor-trustee in its new identity. It further ordered that in the future the trustee would be allowed to withdraw 5% of the trust income annually as a trustee fee without having to file a petition with the court to collect that fee. The income of the trust being insufficient to pay these fees, the court gave the trustee permission to sell approximately 3,600 shares of the stock of the corpus of the trust to satisfy these awards.
This case arises out of the following facts:
Robert Murphree died, leaving a substantial estate in trust for Bess Bradley, Dan Walls (deceased at the time of the litigation), and Huntsville Hospital as beneficiaries. Robert Murphree was formerly a resident of Troy, Alabama, but migrated to Huntsville, Alabama, where he was one of the original owners of the Henderson National Bank of Huntsville, Alabama. The trust consisted of only one asset, stock in the Henderson National Bank. The first trustee was Dean Murphree, a nephew of the settlor, who administered the trust without claiming a fee until he died in July 1970. Thereafter, the First Farmers National Bank began to administer the estate. The trust instrument, apparently drafted by Robert Murphree, made no provision for *Page 1307 
a trustee's fee. The pertinent provisions of the trust instrument are as follows:
 The said Dean Murphree, as trustee, after my death, is to stand seized and possessed of said 158 shares of stock [in Henderson National Bank], during the existence of this trust estate and during the existence of this trust he is to have the right to vote said stock. The said Dean Murphree, as such Trustee, is to collect and pay over the dividends derived from 30 shares of this stock to Dan Walls, for and during the term of his natural life; he is also to collect and pay over the dividends from 50 shares of this stock to Mrs. Bess Bradley, for and during the term of her natural life. The said Dean Murphree, as such trustee, is to collect and pay over the dividends from 78 shares of this stock to the Huntsville Hospital, Inc., during the existence of this trust. This trust is to terminate upon the death of the survivor of Dan Walls and Mrs. Bess Bradley, it being my intention that this trust shall continue and remain in existence until both the said Dan Walls and Mrs. Bess Bradley have died. Upon the death of either of said Dan Walls or Mrs. Bess Bradley, then and in that event, the said trustee, or his successor in office, is to pay over the dividends, which were being paid to said decedent, during his or her lifetime, to the Huntsville Hospital, incorporated until the death of the survivor of the said Dan Walls and Mrs. Bess Bradley. Upon the termination of this trust, which is to end upon the death of the survivor of the said Dan Walls and Mrs. Bess Bradley, I give, devise and bequeath the 158 shares of stock of the Henderson National Bank, comprising the trust estate, to the Huntsville Hospital, Inc. absolutely and in fee simple. It is my wish and desire that the dividends paid to said Huntsville Hospital, Inc. be used by it in defraying expenses of indigent and charitable patients, who may hereafter enter said Hospital for treatment. . . .
 In the event of the death of the said Dean Murphree, who is mentioned above as trustee, before the expiration date of this trust, as hereinbefore set forth, I hereby nominate and appoint the First Farmers and Merchants National Bank of Troy, Alabama, as succeeding trustee, during the remaining period of this trust, with all the powers, duties and obligations imposed upon the said Dean Murphree, as trustee, and I do hereby exempt both the said Dean Murphree as well as the succeeding trustee, the said First Farmers and Merchants National Bank of Troy, Alabama, from the necessity of giving any bond, whatsoever, in the execution of this trust.
During the trusteeship of First Farmers and Merchants National Bank, $592,682.79 was received and $592,616.84 was disbursed. At the time the trustee filed a petition for instructions, it had on hand 69,732 shares of stock in First Bancgroup-Alabama, Inc., worth $1,150,578.00. During that same period, the Henderson National Bank had merged with the First National Bank of Mobile and the stock became stock of First Bancgroup-Alabama, Inc. The only function performed by First Farmers, other than being custodian for the stock, was the receiving of dividend checks from the stock and, in turn, drawing two checks four times a year on the trust estate and mailing these checks to the co-beneficiaries. On one occasion, however, First Farmers deducted a fee from its quarterly disbursement, which was promptly objected to by the beneficiary, Bess H. Bradley. Her attorney took the position that the trustee fee should be paid at Bess Bradley's death. The bank then, in December 1978, wrote:
 We do hereby concur with your decision as to the way the trustee's fee should be collected. In accordance with this decision, a copy of this letter and checks for the amount that has been deducted are being sent to Mrs. Bradley and the Huntsville Hospital. The amount of the checks were determined in the same manner as the original deductions. Thus, Mrs. Bradley's check was $949.50 *Page 1308 
and the Huntsville Hospital's check was $2,050.50.
 In the future, no trustee fee will be deducted and we will petition the court to establish a trustee fee at the termination of this trust.
At the time of the hearing on the bank's petition for instruction and request for trustee's fees, it is undisputed that Mrs. Bradley was 90 years old and resided in the Parkview Village Nursing Home in Huntsville. Although she was alert, she was confined to a wheel chair. It is also undisputed that in reliance on the letter from the bank, Mrs. Bradley sold her home for $58,000.00 and gave her nephews and niece the proceeds therefrom, as well as the furnishings from the home. Although she had willed the same nephews and niece the property before this time, she decided to give the cash to them prior to her death because, if she could receive the income from the trust unencumbered by fees, it would almost exactly equal the quarterly cost for her to stay in the Parkview Village Nursing Home. Although Mrs. Bradley has other assets, it is undisputed that the sale of her property was predicated on the assurance of the bank that no trustee fee would be deducted from her quarterly checks.
It is significant to note here that the other appellant in this case, Huntsville Hospital, has made no objection to the fee awarded to the bank. It is an income beneficiary, as well as the remainderman after the trust terminates at Mrs. Bradley's death. According to the terms of the trust, it is to receive the entire trust estate after the trust terminates on the death of Mrs. Bradley, to be used "for the purpose of defraying the expenses of charity patients and equipping the charity ward of the hospital." Both Mrs. Bradley and the Huntsville Hospital challenge the entitlement to, as well as the reasonableness of, the fee awarded to the law firm of Orme and Faulk. Orme and Faulk state that First Farmers, upon becoming successor-trustee in July 1970, appointed them as "general counsel" to advise the bank on the proper manner to handle the trust. Prior to assuming the position of successor-trustee, First Farmers had employed Orme and Faulk as their "general counsel," under an agreement whereby they were paid an annual retainer of $1,800.00. Orme had been associated with First Farmers for 44 years, during which time he had been a stockholder, a member of the Trust Committee, and a member of the Board of Directors of First Farmers.
Orme and Faulk contend that as general counsel to the trust, they performed two specific services. First, they say they advised First Farmers, as successor-trustee, that in order to prevent having to file a final settlement of the affairs of the prior trustee, it should receive letters from the beneficiaries stating that they had received all that they were entitled to from the previous trustee. This was done. The second specific service claimed by Orme and Faulk was in connection with the Comptroller of the Currency's insistence that the trust assets be diversified. The Comptroller raised the question of whether the stock of Henderson Bank was the same stock as that held by the trust before Henderson merged with First National Bank of Mobile or First Bancgroup-Alabama, Inc. The contention was that if the stock were one and the same, diversification need not occur. However, if it were not one and the same, the stock should be diversified. Orme resisted the suggestion of the Comptroller of Currency that the stock of the trust be diversified; he wrote a letter citing an Alabama case, andScott on Trusts, claiming that the "prudent man rule" applied. The Comptroller was unconvinced, but finally agreed to withdraw its request for diversification if First Farmers would receive indemnification agreements yearly from the residuary beneficiary, Huntsville Hospital, in order to preclude suit should the value of the stock drop. This First Farmers promptly began to do.
When the petition for instructions was filed on June 9, 1982, the corpus of the trust was valued at $1,150,578.00. In May of 1983, the corpus was worth $1,603,836.00, *Page 1309 
a $453,258.00 increase since June 9, 1982. Orme testified that the "bottom line" purpose of the letter to the Comptroller was to prevent a possible future lawsuit by Huntsville Hospital for negligence on the part of the bank, as well as "just getting rid of that nuisance fellow with the Trust Department." Orme and Faulk offered several expert witnesses to testify as to what a reasonable fee would be for their services. These attorneys generally testified as to what a reasonable fee would be for Orme and Faulk because of their position as "general counsel" of this trust. Orme testified that in his practice he had never kept time records. His partner, Mr. Faulk, testified that he did keep time records and had spent 52.6 hours on trust matters since May 1982. He further estimated that Orme had spent 20 to 25 hours on the proceedings involved in the petition for instructions.
The petition for instructions filed by Orme and Faulk in 1982 was occasioned because First Farmers was about to cease to exist, and thereafter it did become First Alabama Bank of Troy. But for a period of almost 13 years, neither the bank nor Orme and Faulk had claimed fees of any kind, except on one occasion, and that claim was withdrawn.
The following issues are before us on appeal:
 1. Whether the trial court erred in awarding First Farmers and Merchants National Bank a trustee's fee of $29,634.13.
 a. Whether the trustee had waived its right to collect its fee for services rendered to the trust prior to the filing of the petition in this case.
 b. Whether the trustee is estopped to collect its fee during the lifetime of appellant Bradley.
 c. Whether the fee awarded to the trustee by the trial court exceeded the reasonable value of the services rendered.
 2. Whether the trial court erred in awarding Orme and Faulk an attorney's fee of $27,000.00.
 a. Whether the legal services rendered by Orme and Faulk were for the benefit of the common estate and properly payable from the trust.
 b. Whether the fee awarded to Orme and Faulk is in excess of the fair value of legal services inuring to the benefit of the common estate.
 c. Whether the fee awarded to Orme and Faulk is in excess of the fair value of the services performed.
 3. Whether the trial court erred in decreeing that payment of fees awarded for administration of the Murphree trust and the attorney's fees should be accomplished by selling a portion of the corpus of that trust.
As to issue one, we hold that the trial court did err in awarding First Farmers and Merchants National Bank a trustee's fee of $29,634.13. The doctrine of equitable or promissory estoppel clearly protects the interest that Bess Bradley has in the corpus of the trust. Huntsville Hospital did not object to the trustee's fees; therefore, 68.35% of the award may be assessed against its interest in the corpus of the trust. As to issue two, although the trial court, in its order, awarded Orme and Faulk a fee of $27,000.00 for services "which have inured to the benefit of the beneficiaries of the trust," we cannot discern from the record with any precision how this determination was made. This part of the order is vacated, with instructions to the trial court to conduct an evidentiary hearing and set forth, in relation to the evidence, the basis of its determination of the award of $27,000.00. We further hold that, under the facts in this case, the trustee's fees, as well as attorney's fees, can be satisfied by selling a portion of the corpus of this trust.
 I.
Alabama recognizes the principle of equitable estoppel, as well as promissory estoppel. In Mazer v. Jackson InsuranceAgency, 340 So.2d 770, 772 (Ala. 1976), we said: *Page 1310 
 This principle has long been recognized in Alabama jurisprudence. See Johnson v. Blair, 132 Ala. 128, 31 So. 92 (1901).
 The basic elements of equitable estoppel are stated in Dobbs, Remedies § 2.3 (1973):
 "An estoppel . . . has three important elements. The actor, who usually must have knowledge of the true facts, communicates something in a misleading way, either by words, conduct or silence. The other relies upon that communication. And the other would be harmed materially if the actor is later permitted to assert any claim inconsistent with his earlier conduct."
Here, the facts cry out for application of the doctrine. Mrs. Bradley, who is 90 years old, sold her house and furnishings and gave the cash, as well as the furnishings, to her nephews and niece, to whom she had previously willed these items. When the bank, in December 1978, wrote to Mrs. Bradley's lawyer, stating "We do hereby concur with your decision as to the way the trustee's fee should be collected," and "In the future, no trustee fee will be deducted and we will petition the court to establish a trustee fee at the termination of this trust," First Farmers made a promise which it could reasonably expect Mrs. Bradley to act on. She did, in fact, act on this promise, because the undisputed testimony is to the effect that after she received the promise, she sold her house and went into a nursing home because the amount of the fees charged by the nursing home was almost identical to the amount she received from the trust.
First Farmers argues that the doctrine does not apply because Mrs. Bradley had other assets that she could use, presumably to supplement any loss of income occasioned by the payment of the trustee's fee. We reject this argument. The doctrine of promissory estoppel is not grounded on the fact that the person who has been misled may not have an alternate course of action. Mrs. Bradley had the right to expect First Farmers to abide by its promise and not use the fact that it was about to change its legal identity to invoke the court's imprimatur on a course of action inconsistent with what it had previously promised her, and which she had relied on. The trustee was about to terminate — the trust was not about to terminate.
Furthermore, there can be no doubt that a trustee may waive compensation for its services. For many reasons, trustees do waive fees for their services. Mr. Dean Murphree is an example in this case. The general rule is as follows:
 Although the trustee is entitled to be paid for his services, he may voluntarily forego his claim to compensation. Thus if the Trust terminates and the trustee distributes the trust property without deducting any compensation, intending to make no claim therefor, he cannot thereafter require the beneficiaries to pay him compensation. Similarly if the trustee pays income to the beneficiaries who are entitled to income and does not deduct compensation to which he is entitled, evidencing an intention to make no claim to such compensation, he cannot thereafter require the beneficiaries to pay him such compensation, nor is he entitled to such compensation out of income subsequently accruing.
Scott on Trusts, § 242.8 (3rd ed. 1967); see also Restatement(Second) of Trusts § 242, Comment j (1959). Numerous cases have reached results in accord with this general rule. See, e.g.,Hardy v. Hardy, 222 Ark. 932, 263 S.W.2d 690 (1954); Cook v.Stockwell, 206 N.Y. 481, 100 N.E. 131 (1912).
Inasmuch as Huntsville Hospital did not object to the trustee's fee, 68.35% of that fee can be paid out of the corpus of the trust with stock earmarked by the trust in the name of the Huntsville Hospital.
 II.
The trial court awarded Orme and Faulk an attorney's fee of $27,000.00 for services inuring to the benefit of the beneficiaries of this trust. After the trial court's decision in this case, this court released Peebles *Page 1311 v. Miley, 439 So.2d 137 (Ala. 1983). There, we reviewed the criteria that had been used for determining attorney's fees in Alabama in the lead cases of Faulk Co. v. Hobbie Grocery Co.,178 Ala. 254, 59 So. 450 (1912), King v. Keith, 257 Ala. 463,60 So.2d 47 (1952), Frazier v. First National Bank of Mobile,235 Ala. 252, 178 So. 441 (1938), Ingalls v. Hare, 266 Ala. 221, 96 So.2d 266 (1957), and added five additional criteria. We do not suggest that all of these criteria must be met. Indeed, there would hardly ever be a case where the application of attorney's fees brought into play every criterion. But they are available for the trial judge to use in connection with each claim for attorney's fees.
In the brief of the Huntsville Hospital, the contention is made that Orme and Faulk are not entitled to any fee because they have not rendered any service for the common estate. This principle is firmly embedded in our law. Zimmerman v. FirstNational Bank of Birmingham, 348 So.2d 1359 (Ala. 1977); Clarkv. Clark, 287 Ala. 42, 247 So.2d 361 (1971); Pate v. Law,277 Ala. 608, 173 So.2d 596 (1965); Matthews v. Lytle, 220 Ala. 78,124 So. 197 (1929); Dent v. Foy, 214 Ala. 243, 107 So. 210
(1925). See e.g., Birmingham Trust Nat. Bank v. Harrison,403 So.2d 224 (Ala. 1981). This court said in Wilkinson v. McCall,247 Ala. 225, 230, 23 So.2d 577, 580 (1945):
 Services for the common benefit of the parties mean services that are of benefit to the common estate, or in other words services rendered in a matter in which the trust as a trust is interested and not services in behalf of the individual interests of the parties to the cause. [Citations omitted.]
In Lewis v. Wilkinson, 237 Ala. 197, 198, 186 So. 150, 150
(1939), this court wrote:
 Attorneys' fees will be charged to the interest in truth and in fact represented. The fact that the representation incidentally resulted in benefit to the other cestuis que trustent did not authorize charging them with attorneys' fees. [Citations omitted.]
We recognize that the award of attorney's fees is largely within the discretion of the trial court. Peebles v. Miley,439 So.2d 137 (Ala. 1983); Johnson v. Georgia Highway Express,Inc., 488 F.2d 714 (5th Cir. 1974). We have read, and read again, the testimony of Orme as it appears on two occasions in the transcript. We also were benefited by his presence in oral argument. However, when he testified that the "bottom line" purpose of the letter to the Comptroller was to prevent any possible future lawsuit from Huntsville Hospital for negligence on the part of the bank, as well as "just getting rid of that nuisance fellow with the Trust Department," it seems that this comes pretty close to saying his main concern was First Farmers Bank, whom he represented as general counsel, whom he had been associated with for 44 years, and with whom he had been a stockholder and a member of the board of directors. But the trial court listened to Orme's testimony and observed him on the witness stand. Therefore, we cannot tell from the cold pages of the record what the court knows, particularly when such knowledge is not reflected in any detail in the order we have before us.
One of the criteria used in evaluating all requests for attorneys' fees is whether valuable services have been rendered to the parties represented. Here, there is testimony to the effect that the Henderson Bank stock, now represented in First Bancgroup-Alabama stock, has experienced a phenomenal growth. Nevertheless, there is no clear showing as to the difference, money-wise, between what the trust estate would be worth if Orme had not resisted the Comptroller of the Currency's suggestion that it diversify, and what it is worth now. Orme suggested that the only investment that could have been made was in government bonds. But this phase of his services was not detailed. Inasmuch as Orme insisted that the trust keep Henderson National stock, now represented in First Bancgroup-Alabama stock, rather than diversify, thereby causing a potential risk to First Farmers, then truly he may *Page 1312 
have performed valuable services directly, not incidentally, for the common trust rather than for First Farmers.
Both Mrs. Bradley and Huntsville Hospital argue that inasmuch as Orme did not keep a record of his hours and only 78 hours can be proved, $27,000.00 is an inordinate amount for the expenditure of so little time. In Peebles v. Miley, supra, we warned against slavish consideration of hours as the sole criterion upon which attorneys' fees can be based. However, if Orme can show that his services in resisting the Comptroller were for the benefit of this trust and these beneficiaries, solely, and that such actions resulted in the benefit to them in the amount of hundreds of thousands of dollars, he indeed may be entitled to the $27,000.00 fee awarded. The trial court's award is, therefore, vacated, with instructions for that court to conduct an evidentiary hearing along the lines indicated, and set forth with some particularity its findings from the evidence adduced.
Finally, all attorneys should remember our admonition inPeebles:
 Because of the sensitive nature of the problem of attorney's fees, the litigants and the public would be better served if both attorneys in this case, and their clients, attempted to settle these differences without further resort to the courts.
439 So.2d at 144.
 III.
The statute dealing with how expenses, including trustee's fees and attorneys' fees, are paid is Code 1975, § 19-3-281. It reads as follows:
 (a) All ordinary expenses incurred in connection with the trust estate or with its administration and management, including regularly recurring taxes assessed against any portion of the principal, water rates, premiums on insurance taken upon the estates of both tenant and remainderman, interest on mortgages on the principal, ordinary repairs, trustees' compensation except commissions directed to be paid out of principal, compensation of assistants, and court costs and attorneys' and other fees on regular accountings, shall be paid out of income. But such expenses where incurred in disposing of, or as carrying charges on, unproductive estate as defined in section 19-3-280 shall be paid out of principal, subject to the provisions of subdivision (2) of section 19-3-280.
 (b) All other expenses, including trustees' commissions directed to be paid out of principal, cost of investing or reinvesting principal, attorneys' fees and other costs incurred in maintaining or defending any action to protect the trust or the property or assure the title thereof, unless due to the fault or cause of the tenant, and costs of, or assessments for, improvements to property forming part of the principal, shall be paid out of principal. Any tax levied by any authority, federal, state or foreign, upon profit or gain defined as principal under the terms of subsection (b) of section 19-3-272 shall be paid out of principal, notwithstanding said tax may be denominated a tax upon income by the taxing authority.
We understand (a) of § 19-3-281, Code 1975, to deal with all ordinary expenses incurred in connection with a trust estate. All other expenses are included under (b). Orme and Faulk contend that the phrase in (b) reading "and other costs incurred in maintaining or defending any action to protect the trust or the property or assure the title thereof" authorizes the court to pay their attorneys' fees out of the principal, inasmuch as the services they rendered were rendered in defending an action on the part of the Comptroller of the Currency, which would have required that they diversify the sole asset of the trust. In other words, the trustee would have had to sell the First Bancgroup-Alabama stock and buy other securities. We view the word "action" in this clause in its technical sense, namely, a court proceeding. Here, there was no court activity arising from the Comptroller's actions. Nor can we view *Page 1313 
the services rendered in this case as an ordinary expense as set forth in (a), requiring payment from the income of the trust, rather than from the principal or corpus of the trust. The enumeration of what usually is considered the nature of the attorneys' fees to be paid out of income leads us to this conclusion. In (a), the words "attorneys' and other fees on regular accountings," do not seem to include the kind of attorneys' fees that are involved in this litigation.
Likewise, we are of the opinion that where the trustee is required to make a settlement because of the imminent termination of its legal existence, the expenses thereby incurred are not ordinary.
Therefore, we are of the opinion, and so hold, that 68.35% of the fee awarded to First Farmers can be paid out of the corpus from stock earmarked for Huntsville Hospital, and whatever fee, if any, the court determines is due to Orme and Faulk, or whatever fee the parties may agree to, can also be satisfied by sale of a portion of the corpus from stock earmarked both for Huntsville Hospital and Bess H. Bradley.
AFFIRMED IN PART; REVERSED IN PART; JUDGMENT IN FAVOR OF ORME AND FAULK VACATED WITH INSTRUCTIONS TO PROCEED IN A MANNER NOT INCONSISTENT WITH THIS OPINION.
TORBERT, C.J., and FAULKNER, ALMON and SHORES, JJ., concur.