BRYAN, Justice.
Frank A. Moultrie appeals from a judgment of the Autauga Circuit Court assessing attorney fees and costs to Moultrie after finding him in contempt for violating the terms of a temporary restraining order (“TRO”) entered by the circuit court. We dismiss the appeal in part and affirm the judgment.

Procedural History

On December 1, 2011, Charles 0. Wall II, individually and as the manager of Au-tauga Automotive, LLC (“Autauga Automotive”), and Autauga Automotive sued Moultrie, seeking a TRO, a preliminary injunction, and a judgment declaring Moul-trie’s and Wall’s respective rights in Au-tauga Automotive. In the complaint, Wall and Autauga Automotive (hereinafter referred to collectively as “the plaintiffs”) asserted that Autauga Automotive was created to own and operate an automobile dealership in Prattville (“the dealership”). Wall and Moultrie are the only members of Autauga Automotive, and Wall was the general manager of the dealership, which sells vehicles manufactured by Ford Motor Company (“Ford”).
The complaint alleged that the operating agreement pertaining to Autauga Automotive was amended on August 20, 2009, to reflect that Moultrie owned 51% and Wall owned 49% of the capital of Autauga Automotive, that they would share any profits and losses in the same percentages, and that Wall was the manager and the registered agent of Autauga Automotive. The complaint further alleged that on or about December 15, 2009, Wall and Moultrie met the comptroller and the certified public accountant for Autauga Automotive to discuss, among other things, tax planning and the allocation of profits and losses. During that meeting, the plaintiffs allege, Wall and Moultrie orally agreed that the profits and losses of Autauga Automotive for 2009 were to be allocated 90% to Wall and 10% to Moultrie.[1] The plaintiffs alleged that the profits and losses of Autauga Automotive were allocated to Moultrie and Wall in the same manner in 2010.
On November 21, 2011, Wall received notice from Moultrie of a special meeting of the members of Autauga Automotive to be conducted on December 5, 2011. The proposed agenda for that meeting included removing Wall as the manager of Autauga Automotive, removing Wall as the general manager of the dealership, and discussing the sale of Autauga Automotive or its assets.
The plaintiffs sought a TRO preventing Moultrie from holding the December 5 meeting, preventing him from making any attempt to sell Autauga Automotive or its *131 assets, and preventing him from taking any actions that would be detrimental to Autauga Automotive, the dealership, or Wall. The plaintiffs also sought a judgment declaring that Wall’s interest in the profits and losses of Autauga Automotive was 90%, that Wall was the “majority in interest” member of Autauga Automotive, and that Moultrie lacked the authority to, among other things, remove Wall as the general manager of the dealership. The plaintiffs alleged that, pursuant to Autauga Automotive’s operating agreement, Wall possessed the majority interest in Autauga Automotive because, they alleged, he owned a 90% interest in the profits and losses of Autauga Automotive and, thus, controlled the voting interests of Autauga Automotive. The plaintiffs alleged that Moultrie was under the mistaken belief that his 51% interest in the capital of Autauga Automotive gave him the majority interest in Autauga Automotive.
The plaintiffs further alleged that Wall, Autauga Automotive, Autauga Automotive’s employees, and the dealership would suffer immediate and irreparable harm if Moultrie was allowed to take the actions set forth in the notice provided to Wall. They alleged that Wall had successfully and profitably managed Autauga Automotive and the dealership since Autauga Automotive’s inception, that Wall was the contact person in all dealings with Ford, and that any interruption in Wall’s dealings with Ford would directly jeopardize Autauga Automotive’s agreements with Ford and the ability of the dealership to do business as a Ford dealership. The plaintiffs set forth several reasons why Ford was unlikely to approve Moultrie as the new general manager of the dealership and alleged that the removal of Wall as the manager of Autauga Automotive and as the general manager of the dealership would cause “the current profitability of both to significantly decrease, [would cause] damage [to] Autauga Automotive’s relationship with Ford[,] and [would] likely cause a mass departure of employees.”
On December 2, 2011, the circuit court entered a TRO enjoining Moultrie, or anyone acting on his behalf, from holding a special meeting of the members of Autau-ga Automotive and taking the actions set forth in the notice sent to Wall, from taking any action to sell Autauga Automotive or its assets, or from taking “any further actions that are detrimental to the best interest of Autauga Automotive, ... the automotive dealership arrangement held by it[,] or ... Wall.” The circuit court scheduled a hearing on the plaintiffs’ motion for a preliminary injunction for December 12, 2011.
On December 9, 2011, Moultrie removed the action to the United States District Court for the Middle District of Alabama. On December 12, 2011, the day the TRO was to expire, United States District Judge Keith Watkins remanded the case, sua sponte, to the circuit court, concluding that the federal court did not have jurisdiction over the action.[2] That same day, the plaintiffs moved the circuit court to extend the TRO based on the federal court’s remand order. On December 13, the circuit court scheduled the preliminary-injunction hearing for the following day. On December 14, the circuit court entered an order, based on an agreement of the parties, stating that the TRO entered on December 2 remained in effect pending further orders of the court.
*132 On January 3, 2012, Moultrie filed an answer and a counterclaim. Moultrie alleged, among other things, that Wall had breached fiduciary duties he owed Autauga Automotive as its manager and that Wall had breached the operating agreement of Autauga Automotive. Moultrie also sought a preliminary injunction seeking, among other things, to prohibit Autauga Automotive from paying Wall anything except his monthly salary. Moultrie also moved the circuit court to dismiss any claim brought by Autauga Automotive. In his motion to dismiss, Moultrie alleged that, because Moultrie owned a 51% majority interest in Autauga Automotive, Wall lacked standing to bring suit on behalf of Autauga Automotive without Moul-trie’s approval or consent.
On February 13, 2012, Wall filed a petition seeking to hold Moultrie in contempt for violating the terms of the TRO. Wall alleged that “certain important documents ha[d] been removed without proper authorization from the ... dealership.” Wall alleged that the documents, which were required by Ford to be maintained at all times on the dealership’s premises, were missing; that those documents had been removed by an employee “believed to be in contact, and working at the direction and in concert, with [Moultrie]”; that Wall’s counsel had informed Moultrie’s counsel of the missing documents and had expressed concern that Moultrie was in possession of the documents; that, subsequently, Moul-trie’s counsel had represented to Wall’s counsel that the documents in question would be returned to the dealership the following day; that a courier from one of Moultrie’s businesses had brought copies of some of, but not all, the missing documents to the dealership; and that no additional documents had been returned since February 3, 2012. Wall requested an award of costs for filing the motion and an award of damages to prevent further violations of the TRO.
On February 21, 2012, the plaintiffs amended their complaint, adding a claim to enforce a “letter of intent” signed by Moul-trie and acknowledged by Wall in October 2011 indicating that Moultrie intended to sell his interest in Autauga Automotive. The circuit court entered an order on February 22, 2012, indicating that the parties were working together to arrive at a mutually agreeable temporary arrangement. On February 27, 2012, the circuit court entered an amended TRO, based on an agreement of the parties, that was to remain in effect pending further order of the court. The amended TRO left in place the terms of the original TRO, but it also prohibited the plaintiffs from, among other things, paying any amount to Wall other than a rental payment and his monthly salary, incurring non-business-related debts in the name of Autauga Automotive, causing Autauga Automotive to pay or incur legal fees in the prosecution of this action after February 22, 2012, and taking any actions that were detrimental to the interests of Autauga Automotive, the dealership, or Moultrie.
On March 20, 2012, the day before the final hearing in this matter was scheduled to take place, all four attorneys representing Moultrie filed a motion for leave to withdraw from the case. The same day, Wall filed a second petition seeking to hold Moultrie in contempt for violating the TRO and the amended TRO. Wall alleged that Moultrie had admitted in his deposition that he had contacted Ford to report warranty fraud occurring at the dealership and that, as a result of that report to Ford, Autauga Automotive had incurred “significant financial penalties.” Wall alleged that the dealership had been penalized by Ford because of the missing documents that had been removed from the premises *133 of the dealership at Moultrie’s direction. Wall also alleged that Moultrie had disregarded a March 15, 2012, order of the circuit court that had required him to provide the plaintiffs any and all financial documents or records involving him, Au-tauga Automotive, and the dealership by March 16, 2012. Further, Wall alleged that, in violation of the TRO and without Wall’s knowledge or permission, Moultrie had entered into a written agreement to sell “100%” of Autauga Automotive to Sansing Holdings, LLC, and that Moultrie had assigned the right to the proceeds of the sale to Citizens Bank & Trust of Gun-tersville as collateral for a loan to Moultrie Nissan, a separate automobile dealership in which Moultrie possessed an ownership interest. The circuit court allowed Moul-trie’s attorneys to withdraw and postponed the final hearing that had been scheduled for March 21.
On May 1, 2012, Moultrie filed a motion seeking the return of funds of Autauga Automotive and a petition seeking to hold Wall in contempt. Moultrie alleged that Wall had used dealership funds to pay his personal income taxes in violation of the amended TRO. On May 22, 2012, Moultrie filed a second petition for contempt and a second motion seeking the return of funds, alleging that Wall had violated the terms of the amended TRO by paying his attorney fees using funds from Autauga Automotive.
After conducting a hearing, the circuit court entered a judgment on May 29, 2012, finding Moultrie in contempt for violating the TRO and the amended TRO based on his having entered into a “sales agreement” with Sansing Holdings, LLC, and having pledged the right to the proceeds from that sale as security for a loan from the Citizens Bank & Trust of Guntersville. The circuit court also found Moultrie in contempt for causing Ford to conduct an audit of the dealership, which audit resulted in a penalty being assessed against the dealership as a result, in part, of the absence of documents that were removed from the dealership at Moultrie’s instructions. The circuit court ordered Moultrie to pay the dealership $25,000, which was the penalty assessed against the dealership by Ford. Moultrie was also ordered to pay Wall’s attorney fees and costs incurred from February 22, 2012, through May 29, 2012.[3] The court stated that it would enter further orders setting forth the amount to be paid by Moultrie after Wall’s counsel submitted their bills and costs to the court. In a separate judgment entered on May 29, 2012, the circuit court denied Moul-trie’s motions seeking the return of funds and his petitions seeking to hold Wall in contempt.
On June 21, 2012, the circuit court entered a judgment assessing $132,345.57 in attorney fees and costs against Moultrie. The circuit court’s June 21, 2012, judgment “specifically assessing attorney fees and costs” provided:
“In this Court’s order of May 29, 2012, in which it found Defendant Frank Moultrie in [cjontempt, the [cjourt assessed [Walll’s attorney fees and costs incurred from February 22, 2012, through May 29, 2012, against Mr. Moul-trie.
“The Court has now had the opportunity to review itemized statements and cost bills presented by [Walll’s counsel as well as the affidavit of Attorney Si-meon Penton attesting to the reasonableness of the attorney fees incurred. The [c]ourt finds that the fees and ex *134 penses incurred are reasonable for the work performed in the prosecution of the [petitions for [cjontempt which were filed and prosecuted against Frank Moultrie;
“It is therefore [ojrdered that Frank Moultrie shall pay the following on or before August 24, 2012:
“Hawthorne & Meyers, LLC — attorney fees and expenses of $10,546.62 plus costs incurred for Dr. Richard Roper of $2450.00;[4]
“Law Office of George P. Walthall, Jr. — attorney fees and expenses of $38,538.80;
“Capell & Howard, P.C. — attorney fees and expenses of $80,335.65 plus costs of $475.00 incurred for Research Services Investigative Specialists.
“The Court has not assessed expenses for Jackson & Thornton at this time as it cannot determine whether its bill is directly related to the contempt issues.[5]
“It is further [ojrdered that the itemized attorney fees and expenses submitted to the [cjourt for in camera review shall be filed and kept ‘under seal’ pending further orders of this [cjourt.”
On June 29, 2012, Moultrie filed a “motion to reconsider” the assessment of attorney fees.[6] On July 9, 2012, the circuit court entered an order denying Moultrie’s postjudgment motion, stating that it had relied on its experience in setting the attorney-fee award and that the attorney fees and costs Moultrie had been ordered to pay as a result of his contempt and his failure to follow the court’s orders were “extremely appropriate under the circumstances.” Moultrie filed a notice of appeal on August 19, 2012. On appeal, Moultrie challenges parts of the May 29, 2012, contempt judgment as well as the June 21, 2012, judgment assessing attorney fees and costs.[7]

Jurisdiction

Rule 70A(g)(2), Ala. R. Civ. P., provides that a contempt adjudication is reviewable by appeal. This Court has previously reviewed a contempt adjudication by appeal even though there had not been a final judgment on the merits in the underlying proceeding. See Gilbert v. Nicholson, 845 So.2d 785 (Ala.2002). Moreover, the circuit court’s failure to adjudicate the amount of the attorney fees to be awarded Wall did not affect the finality of the contempt adjudication. See State Bd. of Educ. v. Waldrop, 840 So.2d 893, 899 (Ala. 2002) (citing Budinich v. Becton Dickinson *135 & Co., 486 U.S. 196, 199-200, 108 S.Ct. 1717, 100 L.Ed.2d 178 (1988)) (“[A] decision on the merits disposing of all claims is a final decision from which an appeal must be timely taken, whether a request for attorney fees remains for adjudication.”); and R.J.G. v. S.S.W., 42 So.3d 747, 750 n. 1 (Ala.Civ.App.2009) (holding that the trial court’s judgment finding the father in contempt was final and appealable even though the trial court had determined, in that judgment, that the mother was due an award of attorney fees but had not determined the amount of attorney fees the mother should be awarded). Cf. Eagerton v. Vision Bank, 99 So.3d 299, 303 (Ala.2012) (concluding that a summary-judgment order was final and appealable despite the fact that the trial court reserved jurisdiction to determine the appropriate amount of attorney fees and costs owed to one of the parties).
However, the timeliness of an appeal affects this Court’s jurisdiction to consider the appeal. Therefore, we first consider whether Moultrie’s appeal, insofar as it challenges parts of the May 29, 2012, contempt judgment, is timely. See Miller Props., LLC v. Green, 958 So.2d 850, 851-52 (Ala.2006) (holding that an untimely filed postjudgment motion does not toll the time for filing a notice of appeal and that this Court has no jurisdiction over an untimely filed appeal).
Moultrie did not file a postjudgment motion within 30 days of the circuit court’s entry of the contempt judgment on May 29, 2012.[8] See Rule 59(b), Ala. R. Civ. P. Thus, he was required to file his notice of appeal from the contempt judgment within 42 days of its entry on May 29, 2012, i.e., on or before July 10, 2012. See Rule 4(a)(1), Ala. R.App. P. Moultrie did not file a notice of appeal until August 19, 2012. Accordingly, insofar as any aspect of Moultrie’s appeal challenges the contempt judgment entered on May 29, 2012, the appeal is untimely and is due to be dismissed.[9]
*136 Furthermore, to the extent that Moultrie challenges the circuit court’s amended TRO, which was entered by agreement of the parties on February 27, 2012, the time for appealing that order had long passed when Moultrie filed his notice of appeal on August 19, 2012. See Rule 4(a)(1)(A), Ala.R.App. P. Thus, we dismiss Moultrie’s appeal insofar as it relates to the May 29, 2012, contempt judgment or the February 27, 2012, TRO.
However, Moultrie filed a timely postjudgment motion challenging the circuit court’s June 21, 2012, judgment assessing attorney fees and costs against Moultrie, which suspended the time for appealing that judgment. See Rule 4(a)(3), Ala. RApp. P. Because Moultrie filed his notice of appeal within 42 days from the date his postjudgment motion was denied, this Court has jurisdiction to consider the propriety of the June 21, 2012, judgment assessing attorney fees and costs against Moultrie. Rule 4(a)(1) and (3), Ala. R.App. P.

Propriety of the Award of Attorney Fees

Moultrie argues that the circuit court exceeded its discretion by assessing what he says is an unreasonable amount of attorney fees against him.
“The determination of whether an attorney fee is reasonable is within the sound discretion of the trial court and its determination on such an issue will not be disturbed on appeal unless in awarding the fee the trial court exceeded that discretion. State Bd. of Edue. v. Waldrop, 840 So.2d 893, 896 (Ala.2002); City of Birmingham v. Horn, 810 So.2d 667, 681-82 (Ala.2001); Ex parte Edwards, 601 So.2d 82, 85 (Ala.1992), citing Porner v. Century Fin. Co., 738 F.2d 1143 (11th Cir.1984).
“This Court has set forth 12 criteria a court might consider when determining the reasonableness of an attorney fee:
“‘(1) [T]he nature and value of the subject matter of the employment; (2) the learning, skill, and labor requisite to its proper discharge; (3) the time consumed; (4) the professional experience and reputation of the attorney; (5) the weight of his responsibilities; (6) the measure of success achieved; (7) the reasonable expenses incurred; (8) whether a fee is fixed or contingent; (9) the nature and length of a professional relationship; (10) the fee customarily charged in the locality for similar legal services; (11) the likelihood that a particular employment may preclude other employment; and (12) the time limitations imposed by the client or by the circumstances.’
“Van Schaack v. AmSouth Bank, N.A., 530 So.2d 740, 749 (Ala.1988). These criteria are for purposes of evaluating whether an attorney fee is reasonable; they are not an exhaustive list of specific criteria that must all be met. Beal Bank v. Schilleci, 896 So.2d 395, 403 (Ala.2004), citing Graddick v. First Farmers & Merchants Nat’l Bank of Troy, 453 So.2d 1305, 1311 (Ala.1984).
“We defer to the trial court in an attorney-fee case because we recognize that the trial court, which has presided over the entire litigation, has a superior understanding of the factual questions that must be resolved in an attorney-fee determination. Horn, 810 So.2d at 681-82, citing Hensley v. Eckerhart, 461 U.S. 424, 437, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983). Nevertheless, a trial court’s or *137 der regarding an attorney fee must allow for meaningful appellate review by articulating the decisions made, the reasons supporting those decisions, and how it calculated the attorney fee. Horn, 810 So.2d at 682, citing American Civil Liberties Union of Georgia v. Barnes, 168 F.2d 423, 427 (11th Cir.1999); see also Hensley, 461 U.S. at 437, 103 S.Ct. 1933.”
Pharmacia Corp. v. McGowan, 915 So.2d 549, 552-53 (Ala.2004).
Moultrie argues that the circuit court’s June 21, 2012, judgment lacks the required specificity to allow for meaningful appellate review. Specifically, he contends that the judgment should be reversed because, he says, there is no indication that the circuit court considered each of the 12 factors set forth in Pharmacia. According to Moultrie, the record indicates that the circuit court considered only 3 of the' 12 factors: the amount of time consumed, the success achieved, and the reasonable expenses incurred. To support reversal on this basis, Moultrie relies on this Court’s decision in Peebles v. Miley, 439 So.2d 137, 141 (Ala.1983), in which this Court stated that “all of the criteria set forth above[, i.e., the 12 factors for determining the reasonableness of an attorney fee,] must be taken into consideration by the trier of the facts in determining a proper counsel fee.”
The record, which includes the affidavit of Simeon Penton, an attorney who testified as to the reasonableness of the attorney fees incurred, indicates that the circuit court considered evidence concerning both the fees customarily charged in the locality for similar legal services and the labor requisite to the proper discharge of the subject matter of the employment, in addition to evidence concerning the amount of time consumed, the measure of success achieved, and the reasonable expenses incurred; moreover, as set forth in the order denying Moultrie’s postjudgment “motion to reconsider,” the circuit court relied upon its own experience in setting attorney fees. Although the judgment assessing attorney fees does not expressly state that the circuit court considered each of the 12 factors set out in Pharmacia, Moultrie has failed to affirmatively demonstrate that the circuit court did not take into consideration all the pertinent criteria for determining the reasonableness of an attorney fee. “[W]e are governed by the long-standing, well-established rule that the appellant has an affirmative duty of showing error upon the record.” Tucker v. Nichols, 431 So.2d 1263, 1264 (Ala.1983). Moreover, as this Court stated in Pharma-cia, the 12 factors are factors that “a court might consider when determining the reasonableness of an attorney fee,” 915 So.2d at 552 (emphasis added), but the 12 factors “are not an exhaustive list of specific criteria that must all be met.” 915 So.2d at 553. Accordingly, we will not reverse the circuit court’s judgment on the sole basis that it does not, on its face, specifically indicate that it considered each of the 12 Pharmacia factors.
Moultrie further argues that the circuit court’s judgment lacks the required specificity because neither the judgment nor the record provides an account of the time spent by Wall’s attorneys on the contempt issues. In Madison County Department of Human Resources v. T.S., 53 So.3d 38 (Ala.2009), this Court remanded a case in which the trial court had entered a judgment assessing attorney fees and instructed the trial court to enter an order “explaining its decision and articulating its reasons for that decision.” 53 So.3d at 45. In that case, the trial court had assessed a fee of $262,500, which was 33 1/3% of the attorney’s recovery for his minor client. In its judgment assessing the attorney fee, *138 the trial court held: “‘Based upon the evidence, the [c]ourt concludes that the attorney fees and expenses sought by counsel are just, fair and equitable for the service he has rendered.’ ” Id. at 43. The evidence presented to the trial court to support the attorney fee was an affidavit from the attorney in question, as well as two affidavits from local attorneys who stated that, in their opinions, the attorney fee of $262,500 was reasonable. Id.
This Court held:
“[T]he trial court’s order approving an attorney fee in the amount of $262,500 plus litigation expenses in the amount of $29,315.99 provides no indication as to whether the trial court considered the criteria set forth for determining the reasonableness of an attorney fee as detailed in Pharmacia, nor does it indicate how the trial court calculated the attorney fee. Although the trial court states that its decision is based on the evidence, it provides no detailed application of the facts regarding [the attorney] fee to the factors set forth in Pharmacia. Additionally, although the record is filled with explanation for the litigation expenses, the record contains no evidence detailing the attorney fee for [the attorney in question]. For instance, it does not contain any document detailing the time [the attorney] spent working on the case. As we stated in Pharmacia, ‘[i]t is generally recognized that the “first yardstick that is used by the trial judges [in assessing the reasonableness of an attorney-fee request] is the time consumed.” Peebles v. Miley, 439 So.2d 137, 141 (Ala.1983).’ 915 So.2d at 553.... Without some explanation by the trial court with regard to its consideration of the 12 factors set out in Van Schaack v. AmSouth Bank, N.A., 530 So.2d 740, 749 (Ala.1988), and discussed in Pharmacia and how it calculated the attorney fee, we cannot ascertain whether the trial court exceeded its discretion in awarding that fee.”
Id. at 44-45.
In the present case, the circuit court’s judgment does indicate that the circuit court considered the criteria for determining the reasonableness of an attorney fee set forth in Pharmacia and Van Schaack v. AmSouth Bank, N.A., 530 So.2d 740 (Ala.1988). The circuit court’s judgment also indicates how the circuit court calculated the attorney fee — by relying on the itemized statements and cost bills presented by Wall’s attorneys. The record does not contain the itemized billing statements from Wall’s attorneys because the itemized billing statements from Wall’s attorneys were sealed; however, it is undisputed that the circuit court considered itemized billing statements from Wall’s attorneys before it assessed the attorney-fee award. In this appeal, Moultrie has not specifically challenged the circuit court’s decision to keep that evidence sealed. Moultrie also has not taken any steps to have the sealed records, which were evidence used to support the circuit court’s judgment, made available for this Court’s review. “This Court has ... held that when all the evidence before the trial court is not before this Court, it is presumed that the missing evidence is sufficient to support the judgment and the judgment should not be disturbed.” Seidler v. Phillips, 496 So.2d 714, 716 (Ala.1986).
Moultrie further argues that the circuit court’s attorney-fee award was unreasonable because, he says, the fees were excessive and redundant. He contends that the circuit court was required to deduct excessive, redundant, or otherwise unnecessary hours billed by Wall’s attorneys when determining the total amount of attorney fees to be assessed against Moultrie. Cf. Norman v. Housing Auth. of the City of *139 Montgomery, 836 F.2d 1292, 1301 (11th Cir.1988) (quoting Hensley v. Eckerhart, 461 U.S. 424, 434, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983)) (applying the lodestar approach to determining attorney fees in a class action and stating that “ ‘excessive, redundant or otherwise unnecessary’ hours should be excluded from the amount claimed”). Moultrie argues that, because he has not been permitted to review the itemized billing statements presented to the Court, he has “no other choice but to assume [the] fees are grossly excessive and unreasonable.” Moultrie’s brief, at 24. Moultrie points out that one of Wall’s attorneys, Frank Hawthorne, filed a notice of appearance on May 18, 2012, only 11 days before the hearing on Wall’s contempt petitions, yet his firm was awarded $10,546.62 in attorney fees and expenses. Moultrie also argues that Hawthorne was one of four attorneys who participated in the contempt hearing on behalf of Wall and that the other three attorneys were capable of handling the contempt issues without Hawthorne’s assistance.
However, in order to reverse the circuit court’s judgment based on the excessiveness or redundancy of the attorney fees, this Court would be required to assume that Hawthorne’s fees, or any other attorney fees in the itemized billing statements presented to the circuit court, were excessive, redundant, unnecessary, or otherwise unreasonable. As noted previously, however, the law forbids this Court from presuming that the circuit court erred. See Tucker v. Nichols, 431 So.2d at 1265-66. Furthermore, we disagree with Moultrie’s implicit argument that the award of attorney fees to Hawthorne’s firm was unreasonable on its face. The affidavit of attorney Penton indicates that Hawthorne’s hourly rate was $300. Assuming that Hawthorne’s bill was based solely on hours he had expended on the case, Hawthorne would have accumulated $10,546.62 in fees in approximately 35 hours. This could have occurred by billing slightly more than three hours per day from the date he filed his notice of appearance to the date of the hearing on the contempt petitions.
In response to Wall’s argument on appeal that Moultrie’s “bad acts” further support the circuit court’s assessment of attorney fees and costs, Moultrie contends that his actions do not merit such a sanction. However, it is evident from the May 29, 2012, contempt judgment that the circuit court found Moultrie guilty of what amounts to flagrant violations of the TRO and the amended TRO entered by the circuit court. Based on the arguments presented by Moultrie in this appeal, we cannot conclude that Moultrie has affirmatively demonstrated that the circuit court exceeded its discretion by assessing $132,345.57 in attorney fees and costs against Moultrie. Accordingly, the judgment assessing attorney fees and costs is due to be affirmed.
APPEAL DISMISSED IN PART; JUDGMENT OF JUNE 21, 2012, AFFIRMED.
MOORE, C.J., and STUART, PARKER, MAIN, and AVISE, JJ., concur.
MURDOCK and SHAW, JJ., dissent.

. The plaintiffs attached affidavits from Au-tauga Automotive’s comptroller and certified public accountant verifying the plaintiffs' rendition of the facts in the complaint regarding Moultrie's and Wall's agreement in December 2009 to allocate 90% of Autauga Automotive's profits and losses to Wall and the remaining 10% of the profits and losses to Moultrie.

. Judge Watkins noted in his remand order that he would entertain a motion for costs, attorney fees, or other appropriate sanctions pursuant to 28 U.S.C. § 1447(c) as a result of the improper removal of the action. The record on appeal does not indicate whether the plaintiffs filed such a motion in the federal court.

. The circuit court's contempt judgment instructs Moultrie to pay "the plaintiff’s” attorney fees and costs. Because the petitions for contempt were filed by Wall, we assume that the circuit court was referring solely to Wall when it awarded those fees.

. As a defense to Wall’s contempt petitions, Moultrie alleged that, without his knowledge, his brother Steve had signed his name to the sales agreement with Sansing Holdings, LLC, and that Steve had obtained a loan on behalf of Moultrie Nissan by pledging the right to the proceeds of the sale of Autauga Automotive as collateral for the loan. Roper is a handwriting expert who was used by Wall during the hearing on the contempt petitions to show that Moultrie, and not his brother Steve, had signed the sales agreement with Sansing Holdings, LLC.

. The record indicates that Jackson & Thornton is a professional corporation that employs certified public accountants. The circuit court's contempt judgment required Moultrie to pay Wall's attorney fees and costs and ordered Wall's counsel to submit their bills and costs to the court. Neither party contends that a possible future award to Jackson & Thornton renders the circuit court's assessment of attorney fees and costs nonfinal.

. "While the Alabama Rules of Civil Procedure do not speak of a ‘motion to reconsider,’ this Court has repeatedly construed motions so styled, when they have been filed within 30 days after the entry of a final judgment, to be Rule 59(e)[, Ala. R. Civ. P.,j motions." Evans v. Waddell, 689 So.2d 23, 26-27 (Ala. 1997).

. Moultrie does challenge on appeal that aspect of the May 29, 2012, contempt judgment that required him to pay the dealership $25,000.

. To the extent that Moultrie’s postjudgment ‘‘motion to reconsider,” which was filed on June 29, 2012, can be construed as a challenge to the contempt judgment entered on May 29, 2012, that motion was filed 31 days after the contempt judgment was entered.

. Notably, Moultrie argued in response to Wall’s motion to dismiss Moultrie’s appeal to this Court that his “appeal arises from the trial court’s order of June 21, 2012, wherein the trial court ordered [Moultrie] to pay $132,435.57 in attorney's fees plus other expenses for work performed by the appellee's attorneys.” He further represented to this Court that "there is nothing in the May 29, 2012, order to appeal.” However, in his brief on appeal Moultrie challenges the circuit court’s May 29, 2012, judgment to the extent that it required him to pay the dealership $25,000. Moultrie argues that because, he says, he owns a majority interest in Autauga Automotive, Wall did not have "standing” to bring suit on behalf of Autauga Automotive and, thus, the circuit court lacked jurisdiction over Autauga Automotive. Although phrased as a “standing” issue, this is really an issue relating to Wall's “capacity” to sue on behalf of Autauga Automotive. It is undisputed between the parties that the majority member of Autauga Automotive, which issue has yet to be resolved by the circuit court, may bring suit on behalf of Autauga Automotive. Questions as to capacity are not jurisdictional in nature. See Penick v. Most Worshipful Prince Hall Grand Lodge F & AM of Alabama, Inc., 46 So.3d 416, 425 (Ala.2010) (noting that "a capacity defense ... does not per se implicate standing and subject-matter jurisdiction”). See also Ex parte Tyson Foods, Inc., [Ms. 1110931, May 24, 2013] — So.3d—,—(Ala.2013) (discussing "the standing/capacity dichotomy”). Accordingly, there is no need to address that argument at this time. Moreover, the question of Wall's status as the majority-interest holder in Autauga Automotive is at the heart of the underlying action. Wall sought a judgment declaring Wall's and Moultrie's respective interests in Autauga Automotive, and the circuit court has not yet ruled on Wall’s request for a declaratory judgment. Because this issue goes to the merits of the underlying action, because capacity is not a jurisdictional question, and because this Court has jurisdic *136 tion to consider only the narrow issue of attorney fees and costs assessed against Moultrie based on the contempt petitions filed and prosecuted by Wall, there is no need to consider this argument further.